PEOPLES WESTCHESTER SAVINGS
BANK, Plaintiff,

v.

Jaime GANC and Ehrman Investment
Group, Inc., Defendants.

No. 87 Civ. 1803 (WCC).

United States District Court,
S.D. New York.

Jan. 30, 1989.

Lane & Mittendorf, New York City, for plaintiff; William E. Kelly, John LoBosco, of counsel.

Jeffrey C. Carter, New York City, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Peoples Westchester Savings Bank ("Peoples Westchester") brought this action to enforce a promissory note executed by defendant Jaime Ganc ("Ganc") as security for a loan that financed Ganc's investment in a Texas oil and gas limited partnership, Onshore Exploration Ltd. 1984 ("Onshore"). Ganc and defendant John N. Ehrman ("Ehrman"), the guarantor, contend that (1) the amount in controversy is not over $10,000; (2) a partial payment of the principal was made but not credited; and (3) plaintiff damaged defendants by wiring the loan proceeds to Citytrust, a banking corporation hired by Onshore to locate financing for the limited partnership investors, rather than to Onshore directly.

The parties have submitted a stipulation of agreed facts; they each contend that the Court should grant summary judgment in their favor pursuant to Rule 56, Fed.R.Civ. P. Nevertheless, after studying the submissions, I conclude that there are questions of fact that must be resolved at trial.

## BACKGROUND

Investments in Onshore were solicited by an offering memorandum dated November 30, 1984. In January, 1986, Onshore's general partner, Ehrman Investment Group, Inc. ("EIG"), approached Citytrust for assistance in locating financing for prospective limited partners. Citytrust responded that it could not provide the financing on its own, but would assist in locating financing.

On January 15, Citytrust reported that it had found a "reliable lending source," Peoples Westchester. Some time before, Peoples Westchester had expressed interest in a proposal made by William D. Starbuck, a Vice President of Citytrust, pursuant to which Peoples Westchester would finance five-year notes at a floating interest rate of 2.5% plus prime, with a 2% origination fee.

Several weeks later, Citytrust sent Peoples Westchester personal financial state-

ments, tax returns, and other documentation in support of the loan requests of prospective investors, including defendant Ganc. Initially, a majority of the applications were rejected. Citytrust then offered Peoples Westchester EIG's guarantee and assignments of the distribution proceeds of the wells. Peoples Westchester responded that some additional individuals, including defendant Ganc, would satisfy their requirements.

Ganc executed the promissory note on January 28, 1986. At about the same time, he executed a security agreement, an estoppel letter, an assignment of interest, an application, and a form authorizing Peoples Westchester to pay the proceeds of the loan to Onshore.

Citytrust was given these documents at a meeting held on February 14, 1986 at Citytrust's offices. Michael Milazzo ("Milazzo") of Citytrust, Ehrman and Roderick Johnson of EIG, and a number of Onshore investors attended the meeting. No one from Peoples Westchester knew about the meeting. There is evidence that, at this meeting, EIG gave Citytrust wire instructions which directed Peoples Westchester to send the proceeds of the loans to Onshore at First City Bank, Houston, Texas. If such instructions did exist, they were never passed on to Peoples Westchester.

Citytrust was the sole contact between Peoples Westchester and Onshore. Peoples Westchester had no direct personal contact with any of the individual investors.

When Peoples Westchester was ready to provide the financing, its Vice President, John Bartolotta, asked Citytrust where to send the loan proceeds. Citytrust instructed Peoples Westchester to send the loan proceeds to Citytrust. By wire transfer, on February 20, 1986, Peoples Westchester transmitted $701,000 to Citytrust. This transfer included the proceeds of Ganc's $35,500 loan.

Ganc and EIG failed to make the principal payment due on the Ganc promissory note on November 1, 1986, or within the ten-day period thereafter. On January 13, 1987, Onshore transferred funds to Peoples Westchester. These funds were not applied to Ganc's debt.

Under the terms of the promissory note, failure to make any payment within ten days of the due date renders the unpaid principal sum and interest under the note immediately due and payable. The unpaid principal under the note at the commencement of the action was $31,062.50. Peoples Westchester seeks to recover the unpaid principal, interest, and its costs of collection. Ganc seeks to recover his costs and expenses in defending this action.

## DISCUSSION

### Subject Matter Jurisdiction

Defendants concede that some amount of the $31,062.50 unpaid principal is due to Peoples Westchester. Their dispute with Peoples Westchester primarily concerns whether Ganc should receive a $3,565 credit on the loan. Despite the fact that defendants have never paid the $27,497.50 that they now admit is owed, defendants contend that the amount in controversy is not over $10,000, and that the Court is without subject matter jurisdiction. I disagree.

 District courts have subject matter jurisdiction in cases between citizens of different states only "where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Unless it appears to a legal certainty that a claim is for less, the amount claimed by a plaintiff in apparent good faith is the amount in controversy within the meaning of 28 U.S.C. § 1332. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Thus, the determination of the amount in controversy is made as of the time the action is commenced. *Id.* at 289–90, 58 S.Ct. at 590–91.

 In an action for liquidated damages, a defendant cannot defeat federal diversity jurisdiction by admitting liability for a portion of the claim so as to bring the sum in dispute below the jurisdictional amount. *Wheel Horse Sales, Inc. v. Spence*, 566

F.2d 679, 680–81 (10th Cir.1977). The Supreme Court has held that a claim need not be contested to be "in controversy" within the meaning of the diversity statute:

> We think that where there is a justiciable claim of some right made by a citizen of one State against a citizen of another State involving an amount equal to the amount named in the statute, which claim is not satisfied by the party against whom it is made, there is a controversy, or dispute, between the parties within the meaning of the statute. It is not necessary that the defendant should controvert or dispute the claim. It is sufficient that he does not satisfy it. It might be that he could not truthfully dispute it, and yet, if from inability, or, mayhap, from indisposition, he fails to satisfy it, it cannot be that because the claim is not controverted the Federal court has no jurisdiction of an action brought to enforce it. Jurisdiction does not depend upon the fact that the defendant denies the existence of the claim made, or its amount or validity. If it were otherwise, then the Circuit Court would have no jurisdiction if the defendant simply admitted his liability and the amount thereof as claimed, although not paying or satisfying the debt. This would involve the contention that the Federal court would be without jurisdiction in many cases where, upon bill filed, it was taken *pro confesso,* or whenever a judgment was entered by default. These are propositions which, it seems to us, need only be stated to be condemned.

*In re Metropolitan R. Receivership,* 208 U.S. 90, 107–08, 28 S.Ct. 219, 223–24, 52 L.Ed. 403 (1908).

When this action was commenced, defendants' obligation under the note exceeded $10,000. There has been no satisfaction of that obligation. Defendants' recent concession of partial liability does not divest this Court of jurisdiction.

*The Partial Payment*

Defendants' second contention is that Ganc cured his November, 1986 default on the note with a partial payment in January, 1987. Plaintiff answers that the partial payment is irrelevant since Ganc's promissory note provides that the entire unpaid principal sum becomes payable upon the promisor's failure to make any payment within ten days of a due date.

Around January 13, 1987, Onshore sent two wire transfers of $10,356.44 each to Peoples Westchester. One of these wires specified that $2,586.61 was to be applied to Ganc's debt. Peoples Westchester applied most of these funds towards the obligations of other individual investors: $9,094.01 to Fessler; $7,304.26 to Ehrman; $3,028.75 to Graham, and $1,265.86 unposted to any account.

The 1987 wire transfer could not cure the 1986 default. Under the terms of the promissory note, Ganc had ten days to cure any default. After November 11, 1986, Peoples Westchester was entitled to accelerate payment of the entire loan.

Were the Court left to resolve this dispute on its own, it would order Ganc's debt reduced by the $2,586.61 that Peoples Westchester was instructed to apply to Ganc's loan. Yet it appears that the parties came to a different resolution after arms-length negotiations and formalized it in their stipulation of facts. The parties agreed that "$1,265.86 may be posted toward principal, which would leave an unpaid principal balance of $29,796.64." Stipulation ¶ 21. Any judgment against defendants will therefore be reduced accordingly.

*Citytrust*

Defendants' third claim is that they were damaged by plaintiff's failure to wire the loan proceeds directly to Onshore. They argue that despite Ganc's written instructions that the funds be sent to Onshore, Peoples Westchester wired the funds to Citytrust. Defendants contend that Citytrust would not have been able to take an excessive commission had the funds been sent directly to Onshore. Ganc requests that he be granted a $3,565 credit on this ground.

Plaintiff replies that Citytrust was Onshore's agent, and that by sending the funds to Citytrust, it was complying with

Ganc's written instructions to wire the funds to "Onshore." Three alternative theories are offered in support of this claim. Plaintiff contends that Citytrust was either Onshore's (1) actual; (2) implied; or (3) apparent agent.

Summary judgment is appropriate only where "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The inquiry under a motion for summary judgment is the same as that under a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Here neither party is entitled to prevail as a matter of law on this issue.

■ Peoples Westchester first contends that Citytrust was authorized, either expressly or impliedly, to receive the loan proceeds. To prove that an agency relationship exists, a third party must demonstrate that the principal delegated responsibilities to the agent. "Authority may be delegated to an agent by words which expressly and directly authorize him to do a delegable act, or it may be implied from the facts and circumstances attending the transaction in question." 2 N.Y.Jur.2d *Agency* § 80 (1979). While an actual agency is created by express verbal or oral agreement, an implied agency may be found where the circumstances suggest that the principal and agent intended to create such a relationship. Moreover, "[a]uthority conferred by one upon another without special limitation carries with it by implication authority to do all things necessary to its execution." *Id.* § 81; *Gumpert v. Bon Ami Company*, 251 F.2d 735, 738 (2d Cir.1958) ("Inherent or incidental authority is a species of actual authority and

means that the position or status of a particular agent normally carries with it certain powers to bind the principal.").[1]

■ There is conflicting testimony as to whether Citytrust was authorized to receive the proceeds. Defendants submit that the form that Ganc signed in January, 1986, authorizing Peoples Westchester to pay the proceeds of the loan to Onshore, is evidence that Citytrust was not authorized to receive the proceeds. I disagree. The authorization form merely indicated that the funds should be sent to Onshore; it did not indicate whether outside representatives of Onshore were authorized to receive the proceeds. If Citytrust was Onshore's agent, Ganc's written instructions were followed.

The deposition testimony of Michael Milazzo of Citytrust supports plaintiff's contention that Citytrust had the authority to accept the funds. Milazzo recalled that at the February 14, 1986 meeting between representatives of Citytrust and Onshore, he said that "when funding would take place the funds would be sent to Citytrust, who would then take out the principal fees and then forward the remainder to Ehrman Investment per the agreement." Milazzo Deposition at 24. When asked whether John Ehrman of Onshore agreed to this arrangement, Milazzo answered that "he did agree." *Id.* Milazzo inferred Onshore's acceptance from their correspondence: "You would have to infer it from the remainder of the documents, also. The fact is the letter came to Citytrust. Why would [Onshore] send a letter to Citytrust talking about overlines funding and money needed if we had nothing to do with that?" *Id.* at 40.

There is also evidence, however, supporting defendants' position that Citytrust was not authorized to accept the funds. Ehrman testified that he gave Citytrust wire instructions at the February 14 meeting which directed Peoples Westchester to send the funds to Onshore's bank account. Ehrman Deposition at 344. Defendants have

---

1. The parties apparently agree that New York law governs this case. While they are probably correct, I need not reach the choice of law issue, since neither party has cited any Texas or Connecticut cases that compel a different result.

provided the Court with a copy of this document, which was notarized by a City-trust employee.

Plaintiff "does not concede the authenticity or genuineness of the purported wire instructions; nor does it accept, *inter alia,* that the wire instructions were prepared and delivered to Citytrust." Plaintiff's March 11, 1988 Letter Brief at 2 n. 1. Milazzo testified that he assumes that he saw the instructions "only because it was notarized by someone in the employ of the bank." Milazzo Deposition at 100.

"[W]here no written authority of the agent has been proven, questions of agency and of its nature and scope and of ratification by or estoppel of the principal, if dependent upon contradictory evidence or evidence, though not contradictory or disputed, from which different inferences reasonably may be drawn, are questions of fact to be submitted to the jury...." *Hedeman v. Fairbanks, Morse & Co.,* 286 N.Y. 240, 248–49, 36 N.E.2d 129, 133 (1941), *quoted in Bertran Packing, Inc. v. Transworld Fabricators, Inc.,* 50 A.D.2d 542, 543, 375 N.Y.S.2d 335, 337 (1st Dep't 1975) (per curiam). Since there is conflicting testimony as to whether Onshore either expressly or impliedly empowered Citytrust to receive the loan proceeds on its behalf, summary judgment cannot be granted on this issue.

■ Similarly, plaintiff's contention that Citytrust was Onshore's apparent agent must be resolved by the fact finder. An apparent agency may exist even where there is no agency in fact. *Greene v. Hellman,* 51 N.Y.2d 197, 204, 433 N.Y.S.2d 75, 80, 412 N.E.2d 1301, 1306 (1980). "Apparent authority ... may bind one to a third party with whom the purported agent had contracted, even if ... the third party is unable to carry the burden of proving that the agent had authority." *Id.*

■ To establish the existence of such an agency, a third party must show that (1) the words or acts of the principal communicated to the third party made it reasonable to believe that the agent possessed the authority to act for the principal, *Hallock v. State of New York,* 64 N.Y.2d 224, 231,

485 N.Y.S.2d 510, 513, 474 N.E.2d 1178, 1181 (1984); (2) the third party relied on this reasonable belief, *Restatement (Second) of Agency* § 27 & comment a; *Greene,* at 204; and (3) the third party made reasonable inquiries as to the ostensible agent's actual authority, *Collision Plan Unlimited, Inc. v. Bankers Trust Company,* 63 N.Y.2d 827, 830, 482 N.Y.S.2d 252, 253, 472 N.E.2d 28, 29 (1984).

■ While the parties agree that Onshore allowed Citytrust to act as an intermediary between Peoples Westchester and Onshore, Onshore contends that Peoples Westchester's belief that Citytrust was authorized to accept the funds was unreasonable and formed without a diligent inquiry into Citytrust's actual authority. Defendants' Brief at 11–12; Defendants' Reply Brief at 8. Whether plaintiff acted reasonably under the circumstances is a question of fact that precludes summary judgment. *See Stanford v. Kuwait Airways Corp.,* 648 F.Supp. 1158, 1162 (S.D.N.Y.1986) ("The existence of apparent authority is a question of fact...."); *cf. Schimdt v. McKay,* 555 F.2d 30, 37 (2d Cir.1977) (whether plaintiff could have discovered alleged fraud had he acted with reasonable diligence involved "a dispute concerning state of mind and conflicting interpretations of perceived events" which could not be resolved without a trial).

## CONCLUSION

For the reasons stated above (1) defendants' motion to dismiss for want of subject matter jurisdiction is denied; (2) defendants' request for a $1,265.86 credit toward Ganc's obligation on the promissory note is granted; and (3) the cross-motions for summary judgment are denied.