WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, Respondent, v IRVING TRUST COMPANY et al., Defendants and GENERAL INSURANCE COMPANY OF AMERICA, Appellant.

IRVING TRUST COMPANY, Third-Party Plaintiff, v CITIBANK, N. A., Third-Party Defendant.

First Department, February 28, 1989

## APPEARANCES OF COUNSEL

*Janis Ettinger* of counsel *(Curtis C. Mechling* and *Edward Tessler* with her on the brief; *Stroock & Stroock & Lavan,* attorneys), for respondent.

*Benjamin D. Lentz* of counsel *(Hart & Hume,* attorneys), for appellant.

## OPINION OF THE COURT

WALLACH, J.

"One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority" *(Ford v Unity Hosp.,* 32 NY2d 464, 472). Plaintiff relies on this comment by the Court of Appeals and other statements to like effect as justification for an action based on the theory that a third person who deals with an agent but fails to make reasonable inquiry into the agents authority becomes liable to the principal in tort for defalcations of the agent that could have been prevented had such an inquiry been made. The comment, however, must be kept in its context, which was an action not by a principal against a third person who dealt with a disloyal agent, but by a third person against a principal that was held to be without merit because of the agent's lack of apparent authority to enter into the contract sought to be enforced. The point of the comment was that since the doctrine of apparent authority does not automatically bind the principal to every transaction entered into by his agent purportedly on his behalf, prudence, if nothing else, dictates that when an agent's authority to enter into a particular transaction is less than certain, an inquiry be made of the principal to confirm the actual scope of the agent's authority. In other words, a duty of inquiry, if such it be, is owed by the third person not to the principal but to himself. Thus this action, based as it is on the theory that the failure to so inquire constitutes negligence, should have been dismissed for failure to state a cause of action.

Insofar as pertinent to this appeal, the complaint alleges that plaintiff, William Penn Life Insurance Company (Penn), was a stakeholder in a lawsuit concerning certain life insurance proceeds in which a judgment of approximately $114,000, representing the full amount of the policy plus interest, was entered against it. Asserting that the last premium due under the policy had never been paid, and that the amount thereof, approximately $8,000, should have been set off against the

proceeds of the policy, Penn issued its check for approximately $107,000, representing the proceeds of the policy less the amount of the unpaid premium plus interest, and gave it to its attorney, one Richard Pikna, with instructions to deliver it to the prevailing claimant's attorney, to whom it was made payable, and with further instructions to take an appeal seeking to reduce the amount of the judgment by the amount of the unpaid premium. It is then alleged that Pikna forged the signature of the prevailing claimant's attorney and deposited the check in an account he had with defendant Citibank, N. A. Citibank accepted the check and forwarded it for payment to the drawee bank, defendant Irving Trust Company, who completed the collection process by accepting the check and debiting Penn's account. In the meantime, Pikna, according to the complaint, "in order to avoid detection", noticed an appeal for the entire amount of the judgment entered against Penn, not just the unpaid premium as he had been instructed, and "arranged" with defendant General Insurance Company of America (General), a surety bonding company to have an appeal bond in the amount of $120,000 issued in Penn's name. Issuance of this bond automatically stayed enforcement of the entire judgment against Penn, effectively "precluding the possibility" that the prevailing claimant's attorney would seek to enforce the judgment—a possibility that would have "revealed" such attorney's nonreceipt of Penn's check. Not until almost a year later, when the dismissal of Penn's appeal prompted the prevailing claimant's attorney to contact General, and General in turn contacted Penn, did Penn learn that the prevailing claimant's attorney had never received its check for $107,000. What became of Pikna the complaint does not say, although the argument proceeds on the assumption that he is not amenable to suit. It is a matter of some emphasis in the complaint, and especially in Penn's argument, that Penn itself never executed an application for an appeal bond, and that General never demanded such or otherwise sought instructions directly from Penn.

The complaint seeks to hold General liable in the amount of Penn's check on the ground that "General Insurance had a duty to notify William Penn within a reasonable time that General Insurance had issued the Bond in William Penn's name", and that the failure to so notify constitutes actionable negligence since it resulted in the loss of the check. We understand this to mean that had Penn been informed of the nature of Pikna's dealings with General when such dealings

were current, it would have questioned him as to why he was taking out a bond for the full amount of the judgment, when he was authorized to bond only the unpaid premium, and learned that he was doing so for dishonest purposes. With such knowledge, Penn would have stopped bank collection of its check, or, if that process had already been completed, at least might have been able to recover the proceeds from Pikna before he was able to dispose of them.

The duty that Penn asserts General had to notify it of the issuance of the bond is not claimed to exist by reason of any statute, rule or custom of the surety bonding industry. Rather, it is Penn's contention that under common-law principles of agency General should have suspected Pikna's authority to procure the bond, and thus made inquiry of Penn concerning it, if not immediately, then certainly when General did not receive a written bond application from Penn itself within a reasonable, but otherwise unspecified, period of time. To put it in black-letter terms, Penn is arguing that when a third person is approached by a second person who proclaims himself to be an agent for a first person, but who lacks any indicia of authority other than his own self-proclamation, the third person owes a duty to the first person, the putative principal, to make a reasonable inquiry into the authority of the second person, the putative agent, which, if breached, makes the third person liable for any losses sustained by the putative principal attributable to the unauthorized acts of the putative agent that could have been prevented had the putative agent's lack of authority been exposed at or about the time of his dealings with the third person. According to Penn, this "duty of inquiry and verification" could have been satisfied in this case had General taken the minimal step of contacting Penn to confirm the fact and scope of Pikna's supposed authority.

We reject Penn's contention that General owed it a duty of inquiry. Again, the source of this duty is claimed to be found not in any statute, rule or custom, but in case law. But the cases cited by Penn—because they speak of a third person dealing with an agent at his peril if reasonable inquiry is not made into the agent's authority—all involve an attempt by the third person to hold the putative principal liable on the contract executed by the putative agent *(Ford v Unity Hosp.,* 32 NY2d 464, *supra; Strip Clean Floor Refinishing v New York Dist. Council No. 9 Bhd. of Painters,* 333 F Supp 385; *Matter of Lester,* 87 Misc 2d 717; *Schenck v Bear, Stearns & Co.,* 484 F Supp 937; *Matter of Karavos Campania Naviera v Atlantica*

*Export Corp.,* 588 F2d 1). None of these cases, nor any others of which we are aware, stand for the proposition that a third person can be held liable in tort to a putative principal for dealing with someone who claims to be an agent but is not, or who is but exceeds his authority. Rather, they simply stand for the principle that if such dealings are undertaken without the third person making reasonable inquiry into the putative agent's authority, then the third person may not look to the putative principal to make good any damages that he, the third person, sustains. Or, as General aptly puts it, the duty of reasonable inquiry is owed by the third person to himself, not the putative principal. The situation, as General readily acknowledges for the sake of argument, would be altogether different were this an action by General against Penn to recover, for example, a premium payment, or otherwise seeking to hold Penn liable on the suretyship agreement that Pikna presumed to enter into on Penn's behalf.

General argues that the duty of inquiry urged by Penn is not only novel but also at odds with analogous case law in that it would impose upon a third person dealing with an agent an affirmative duty to protect the principal from the defalcations of his own selected agent (citing *Hutzler v Hertz Corp.,* 39 NY2d 209, 215 [principal sought to hold third person liable for loss sustained by principal when agent appropriated the proceeds of a check made payable by third person to principal and agent jointly; *held:* "It is the (principal), after all, who selected a dishonest person to represent him, and he, not the (third person), should bear the risk of his unauthorized acts, having placed him in a position to perpetrate the wrong."]). Against this, Penn points out that the agent in *Hutzler,* also an attorney, was known to be such for reasons much more reliable than his own representations, thus making the third person's dealings with him clearly justifiable, and argues that the threshold question is not, as General would have it, whether Pikna was, as it happened, "vested with some modicum of authority" to act on Penn's behalf, but whether General did enough "to learn about that purported 'agency' when Pikna proclaimed its existence" such as would have given it reason to believe that he was in fact what he represented himself to be, Penn's agent, and justified its dealing with him in that capacity. Unless the issue is so defined, Penn argues, "there would be no protection against even the most transparent of pretenders." We are not per-

suaded. Protection is needed not against pretenders or, as Penn elsewhere puts it, "strangers", but against unfaithful agents. A stranger, after all, would not have had the opportunity to steal Penn's money since he would not have been entrusted with it in the first place. Notwithstanding that Pikna's authority could, in contrast to *Hutzler*, be deemed not apparent, as between General, who merely took Pikna at his word, and Penn, who placed Pikna in a position of trust enabling him to perpetrate the wrong, it is Penn who should bear the loss it sustained as a result of Pikna's swindle.

If the fact of Pikna's employment by Penn to act as its attorney does not itself estop Penn from asserting as against General that Pikna lacked authority to procure the appeal bond, and if it is true, as Penn contends, that it was unreasonable for General to issue that bond without inquiring into Pikna's authority, then, just as General would not have a cause of action against Penn in contract on the suretyship agreement, neither should Penn have a cause of action against General in tort. Both should bear their own loss; neither should have to bear the other's.

Accordingly, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered on or about October 13, 1987, which denied General's motion to dismiss the complaint for failure to state a cause of action, should be reversed, on the law, without costs, and the motion granted.

KUPFERMAN, J. (dissenting). I would affirm. A claim for negligence is adequately stated in connection with the failure timely to notify the plaintiff-respondent. While the bond may have been issued at the request of an attorney who had apparent authority, there should, within a reasonable time, have been a verification of the agency relationship by the receipt of an executed bond application, which was not done. It is in this that there may have been negligence, and so a cause of action is stated.

MURPHY, P. J., ASCH and KASSAL, JJ., concur with WALLACH, J.; KUPFERMAN, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on or about October 13, 1987, reversed, on the law, without costs and without disbursements, and the motion to dismiss the amended complaint granted.