**PEOPLES WESTCHESTER SAVINGS BANK, Plaintiff,**

v.

**Jaime GANC and Ehrman Investment Group, Inc., Defendants.**

**No. 87 Civ. 1803 (WCC).**

United States District Court, S.D. New York.

June 29, 1989.

---

Lane & Mittendorf, New York City, for plaintiff (William E. Kelly and John LoBosco, of counsel).

Jeffrey C. Carter, New York City, for defendants.

WILLIAM C. CONNER, District Judge:

This action is before the Court on the parties' joint request for judgment on submitted facts. *See* Fed.R.Civ.P. 83 (district courts may make local rules); General Rule 8 of the Rules of the Southern and Eastern Districts of New York (where no federal procedure exists, court may apply New York procedure); N.Y.Civ.Prac.L. & R. § 3222 (McKinney 1970) [hereinafter CPLR] (action on submitted facts); *see also* Plaintiff's February 15, 1989 Letter at 3 n. 2. I find that plaintiff is entitled to the unpaid principal on the defendants' promissory note, along with interest and costs of collection, minus a $1,265.86 credit.

## BACKGROUND

On January 30, 1989, I denied the parties' cross-motions for summary judgment, noting that the agency issue turned on questions of fact to be resolved at trial. *Peoples Westchester Savings Bank v. Ganc*, 705 F.Supp. 164, 168–89 (S.D.N.Y. 1989). Subsequently, the parties asked me to resolve this issue on the basis of the briefs, affidavits, and exhibits submitted in support of their summary judgment motions. Familiarity with the Court's previous Opinion is presumed.

Plaintiff Peoples Westchester Savings Bank ("Peoples Westchester") seeks to enforce a promissory note executed by defendant Jaime Ganc ("Ganc") as security for a loan that financed Ganc's investment in a Texas oil and gas limited partnership, Onshore Exploration Ltd. 1984 ("Onshore"). Ganc and defendant John N. Ehrman ("Ehrman"), the guarantor, have refused to pay the promissory note on the ground that plaintiff's failure to wire the loan proceeds directly to Onshore, in contravention of Ganc's written instructions, permitted Citytrust, a banking corporation hired by Onshore to locate financing for its investors, to deduct $3,565 in excess commissions. Plaintiff replies that Citytrust was Onshore's actual, implied, or apparent agent,

and that by sending the funds to Citytrust, it was complying with Ganc's written instructions to wire the funds to "Onshore."

## DISCUSSION

### Standard of Review

█ In my earlier decision, I denied the parties' cross-motions for summary judgment because the agency issue turned on resolving inferences and determining whether plaintiff's conduct was reasonable. *Peoples Westchester*, 705 F.Supp. at 168–69. A key distinction between a motion for summary judgment under Rule 56, Fed.R. Civ.P., and an action on submitted facts under CPLR § 3222 is that under CPLR § 3222, the Court "may find facts by inference from the facts stipulated." CPLR § 3222(b)(4). As one commentator explained:

The major barrier to the use of the submission device under prior law was that the statement of facts had to be so replete that a determination did not even require the drawing of an inference....

This prior-law limitation is removed by CPLR 3222(b)(4)....

CPLR § 3222 practice commentary at 1086.

### Citytrust as Onshore's Agent

#### Actual Agency

Peoples Westchester first contends that Citytrust was authorized, either expressly or impliedly, to receive the loan proceeds. "To prove that an agency relationship exists, a third party must demonstrate that the principal delegated responsibilities to the agent." *Peoples Westchester*, 705 F.Supp. at 168. "[A]n implied agency may be found where the circumstances suggest that the principal and agent intended to create such a relationship." *Id.*

I previously found that whether an actual or implied agency existed turned on whether, at a meeting held on February 14, 1986 at Citytrust's office, Ehrman "gave Citytrust wire instructions ... which directed Peoples Westchester to send the funds to Onshore's bank account." *Id.* Ehrman swears that such instructions were given to Citytrust, Ehrman Deposition at

344, and defendants have provided the Court with a copy of this document, which was notarized by a Citytrust employee. Moreover, Michael Milazzo of Citytrust, who was present at the meeting, assumes that he saw the instructions "only because it was notarized by someone in the employ of the bank." Milazzo Deposition at 100. Nevertheless, plaintiff has refused to "concede the authenticity or genuineness of the purported wire instructions [or accept] that the wire instructions were prepared and delivered to Citytrust." Plaintiff's March 11, 1988 Letter Brief at 2 n. 1.

█ It is reasonable to infer that, at the February 14, 1986 meeting, Onshore gave Citytrust a document directing Peoples Westchester to wire the loan proceeds to Onshore's bank account. While Citytrust's officer does not remember seeing this document, the fact that defendants have produced a document that was notarized by a Citytrust employee makes it highly probable that Citytrust was given the wire instructions. It follows, therefore, that Citytrust was divested of the authority to receive the proceeds on Onshore's behalf. Thus, when Peoples Westchester wired the funds to Citytrust, it was not dealing with Onshore's authorized agent.

#### Apparent Agency

Plaintiff argues that, even if Citytrust was not authorized to act as Onshore's agent, Onshore's actions gave rise to an apparent agency upon which Peoples Westchester reasonably relied. "To establish the existence of [an apparent] agency, a third party must show that (1) the words or acts of the principal communicated to the third party made it reasonable to believe that the agent possessed the authority to act for the principal ...; (2) the third party relied on this reasonable belief ...; and (3) the third party made reasonable inquiries as to the ostensible agent's actual authority...." *Peoples Westchester*, 705 F.Supp. at 169; *accord Fennell v. TLB Kent Company*, 865 F.2d 498, 502–03 (2d Cir.1989) ("Second Circuit case law supports the view that apparent authority is created only by the representations of the principal

to the third party, and explicitly rejects the notion that an agent can create apparent authority by his own actions or representations.").

It is undisputed that Onshore allowed Citytrust to act as the intermediary between it and Peoples Westchester. Yet whether Peoples Westchester's belief that Citytrust was authorized to accept the funds was reasonable and whether it was formed after a diligent inquiry into Citytrust's actual authority are questions of fact which I must now resolve. *See Peoples Westchester*, 705 F.Supp. at 168–69.

■ I find that Peoples Westchester acted reasonably in assuming that Citytrust was authorized to accept the funds for Onshore. Onshore allowed Citytrust to be its sole contact with Peoples Westchester. Moreover, the lender had no direct personal contact with any of the individual investors. *See* Stipulation of Undisputed Facts ¶ 16. After Citytrust selected Peoples Westchester as a reasonable lending source for Onshore's investors, Citytrust sent Peoples Westchester personal financial statements, tax returns, and other documentation in support of the loan requests of prospective investors. When many of these applications were rejected, Citytrust offered Peoples Westchester a guarantee from the Ehrman Investment Group, Inc., and assignments of the distribution proceeds of the wells. The meeting held on February 14, 1986 at Citytrust's offices was attended by Milazzo of Citytrust, Ehrman and Roderick Johnson of Onshore, and a number of Onshore investors. No one from Peoples Westchester even knew about the meeting. *Id.* ¶ 14 n. 2. All of these factors combined to give People's Westchester the impression that Onshore had authorized Citytrust to act in its name.

Unfortunately, Citytrust never gave Peoples Westchester Onshore's wire instructions. When Peoples Westchester was

ready to provide the financing, its Vice President, John Bartolotta, assumed that Citytrust was authorized to provide him with wire instructions. Citytrust instructed Bartolotta to send the loan proceeds to its own account.

By allowing Citytrust to act as an intermediary, Onshore left Peoples Westchester with the reasonable impression that Citytrust was its authorized agent with respect to the entire transaction. In hindsight, it might have been preferable for Peoples Westchester to have demanded that Citytrust present documentary proof of its authority to accept the loan proceeds. Such a safeguard, however, would have been above and beyond the call of duty. It is understandable that after months of Onshore's acquiescence, Peoples Westchester was satisfied that Citytrust could speak for Onshore. It appeared that any further inquiry into Citytrust's actual authority would be superfluous. I find that Peoples Westchester's belief, that Citytrust was authorized to accept the loan proceeds, was reasonable, and that, under the circumstances, the steps that plaintiff took to determine whether Citytrust was Onshore's actual agent were adequate.[1]

*Collection Costs*

The promissory note provides that Peoples Westchester is entitled to its costs of collection in the event of a default:

> COLLECTION COSTS: The BORROW-ER agrees to pay all costs of collection, including court costs, and reasonable attorney's and collection service fees, and such costs may be made a part of any judgment obtained against the BORROWER, endorser, or guarantor of this NOTE based upon its enforcement.

Exhibit A to the Amended Complaint at 1. Plaintiff argues that it is entitled to recover these costs, and has assured the Court that "[t]he actual costs of collection incurred by plaintiff will be presented to the

---

1. Shortly after I denied the cross-motions for summary judgment, the Appellate Division, First Department, ruled that a third party cannot be sued in tort for the defalcations of an agent that would have been thwarted had the third party inquired as to the scope of the agent's authority. *William Penn Life Insurance*

*Co. of N.Y. v. General Insurance Co.*, 145 A.D.2d 174, 538 N.Y.S.2d 254 (1st Dep't 1989). It is probable that under this precedent, defendants counter-claim should be dismissed. I need not reach this issue, however, since it is clear that plaintiff acted reasonably and diligently under the circumstances.

Court at such time as the Court may direct, together with supporting affidavits or testimony." Plaintiff's Brief in Support of its Application to Recover its Costs of Collection at 1.

■ Defendants have opposed plaintiff's application for costs, on the ground that the promissory note limits plaintiff's right of recovery for attorney fees to "reasonable" fees. Defendants' March 27, 1989 Letter Brief. While I agree that plaintiff can only recover attorney fees that were reasonably incurred, defendants' objection is premature. Defendant may object to the particulars of plaintiff's request for collection costs after plaintiff submits them in connection with its proposed judgment. At this juncture, I agree with plaintiff, that it is entitled to its costs of collection, including reasonable attorney fees. *See Peoples Westchester Savings Bank v. Carlisle*, No. 87 Civ. 0463 (SWK), Slip Op. appendix at 4–5 (S.D.N.Y. January 4, 1989).

### CONCLUSION

For the reasons stated above, plaintiff Peoples Westchester is entitled to recover from defendants Ganc and Ehrman the unpaid principal on the Ganc promissory note, $31,062.50, along with interest and costs of collection, minus a $1,265.86 credit which, in my Opinion and Order dated January 30, 1989, I found defendants are due.