In re LOIS/USA, INC., Lois/USA New York, Inc. Lois/USA Chicago, Inc., Debtors.

The Official Committee of Unsecured Creditors of Lois/USA, Inc., Lois/USA New York, Inc., Lois/USA Chicago, Inc., Plaintiff,

v.

Conseco Finance Servicing Corp. f/k/a Green Tree Financial Corp., and General Electric Capital Corporation, Defendants.

Bankruptcy Nos. 99 B 45910(REG), 99 B 11026, 99 B 11025. Adversary No. 00–2350.

United States Bankruptcy Court, S.D. New York.

Sept. 10, 2002.

See also 264 B.R. 69.

Blodnick, Gordon, Fletcher & Sibell, PC, By Robert D. Goldaber and Jules A. Epstein, Westbury, NY, for Plaintiff Official Committee of Unsecured Creditors.

Togut, Segal & Segal, LLP, By Frank A. Oswald, New York City, for Debtor.

Latham & Watkins, By James A. Cherney, Chicago, IL, By Roland Young, New York City, for Conseco Finance Servicing Corporation, f/k/a Green Tree Financial Corporation.

Cahill, Gordon & Reindel, By Thomas J. Kavaler, Susan Buckley, Janet A. Beer and Benjamin L. Zazove, New York City, for General Electric Capital Corp.

*MEMORANDUM DECISION AND ORDER ON MOTION OF GENERAL ELECTRIC CAPITAL CORPORATION TO DISMISS FOURTH AND FIFTH CLAIMS FOR RELIEF PURSUANT TO FED R. CIV. P. 9(b) FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY*

ROBERT E. GERBER, Bankruptcy Judge.

As it did before, with respect to the

First Amended Complaint[1] of the plaintiff Official Committee of Unsecured Creditors of Lois/USA (the "Committee"), defendant General Electric Capital Corporation ("GECC") moves, pursuant to Fed. R.Civ.P. 9(b), made applicable to this adversary proceeding under Fed. R. Bankr.P. 7009, to dismiss the Fourth and Fifth Claims for Relief in the Second Amended Complaint,[2] for failure to plead the alleged fraud by GECC with particularity. The motion is granted, this time without leave to replead.

*Background*

In a fairly lengthy decision on motions to dismiss the First Amended Complaint, which was officially reported, *see Official Committee of Unsecured Creditors of Lois/ USA, Inc. v. Conseco Finance Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69 (Bankr. S.D.N.Y.2001),[3] this Court granted a similar motion by defendant GECC (with lead to replead), though it denied a similar motion by GECC's co-defendant Conseco Finance Servicing Corp., f/k/a Green Tree Financial Corp. ("Green Tree"). *See* 264 B.R. at 137–140. The problem at the time, as articulated by this Court, was that:

> As pleaded, all of the misrepresentations and/or acts constituting fraud were made by Green Tree, not GECC, but the Committee is attempting to hold GECC responsible for Green Tree's acts.

*Id.* at 139. This Court further stated:

> The Court has been unable to find any allegation that GECC made any false

statement to Lois; made Green Tree GECC's agent prior to the June closing; or provided any other actual or alleged basis for holding GECC liable for Green Tree's acts.

*Id.* at 140.[4]

*Amended Fraud Allegations*

Since the time of that decision, the Committee has amended its complaint, and crafted what is now the Second Amended Complaint. The Fourth and Fifth Claims for Relief (sounding in fraudulent misrepresentation and fraud), which previously appeared at First Amended Complaint ¶¶ 95–109, and 110–124, respectively, now appear at Second Amended Complaint ¶¶ 144–159, and 160–175, respectively. As in the first Amended Complaint, there are no allegations in the Second Amended Complaint that prior to the closing of the loan, GECC made any of the allegedly false statements itself; the allegations are, instead, that:

> At the time that Green Tree made certain of these representations, Green Tree was acting on behalf of both itself and GECC, with GECC's knowledge and intent (as stated more fully herein in paragraphs 45–49). Indeed, GECC participated in telephone conversations when certain of these representations were made and actively concealed the true status and terms of the credit facility.

---

1. Cited as "FAC."

2. Cited as "SAC."

3. Familiarity with that decision, and the facts and allegations set forth at some length therein, is assumed.

4. This Court had earlier stated, in that connection:

> The Court is aware that the Committee has alleged that "[a]t the time that Green Tree made certain of these representations, Gree

Tree was acting on its own behalf and as agent of GE, its principal." See [First Amended] Cmplt. ¶ 97; *accord* ¶¶ 112, 134. However, there are no facts pleaded supporting the alleged agency before June, 1999, and the Court believes that a conclusory allegation of that character cannot fairly be held to satisfy Rule 9(b).

> *Id.* at 139 n. 177.

SAC ¶ 146; *accord* ¶ 162. These allegations are more expansive than their predecessors,[5] but also less expansive in a notable respect; they drop the express allegation that Green Tree was acting as an agent of GECC.

Instead, each incorporates five paragraphs from earlier in the complaint, ¶¶ 45–49. The allegations in those paragraphs, quoted in full in the margin,[6] likewise do not say that that Green Tree was the agent of GECC, its principal. They instead say that GECC began to participate in many of the conference calls "by way of listening in to the conversations rather than directly speaking," and that as a result "Lois understood" GECC to be a participating lender. (SAC ¶ 47). A similar allegation then follows: Lois understood the misrepresentations made by Green Tree to be made on behalf of both Green Tree and GECC. (SAC ¶ 48).

These allegations are followed by an allegation that GECC "knew or had reason to know" that "Lois understood" Green Tree's representations to have been made by both prospective lenders. "As a result," it is alleged, "both Green Tree and GECC worked together" to actively misrepresent and actively conceal the true status of the credit facility. (SAC ¶ 49).

Notably, the allegations fail to set forth anything GECC *said* to provide the foundation for what "Lois understood," nor that it had a duty to speak in that regard.[7]

---

**5.** The First Amended Complaint had stated, in each of its counterpart paragraphs, ¶¶ 97 and 112:

> At the time that Green Tree made certain of these representations, Green Tree was acting on its own behalf and as agent of GE[CC], its principal.

**6.** Those paragraphs alleged:

> 45. In or about early March 1999, based upon Green Tree's Offering Memorandum, GECC expressed an interest in participating in the facility for $15 million.

> 46. Green Tree's assurance that the new credit facility would close proved hollow. The "due diligence" period dragged out as, upon information and belief, neither Green Tree nor GECC had significant experience in providing credit facilities to a service business of the nature of Lois. In fact, Lois later learned that neither had previously entered into a financing arrangement with an advertising agency. Green Tree's inordinately protracted due diligence was in part a direct result of its undisclosed lack of experience with the advertising industry as well as its difficulty in securing the participation of another lender.

> 47. At this time, GECC began to participate in many of the conference calls between Lois and Green Tree by way of listening in to the conversations rather than directly speaking, and as a result Lois understood GECC to be a participating lender.

> 48. Lois understood the misrepresentations made by Green Tree during these conference calls and in all other conference calls and negotiations to be made on behalf of both Green Tree and GECC.

> 49. Upon information and belief, GECC knew or had reason to know that Lois understood Green Tree's representations to have been made by both Green Tree and GECC. As a result both Green Tree and GECC worked together to actively misrepresent and actively conceal the true status of the credit facility.

**7.** In its answering brief, though not, either directly or by incorporation in the Fourth and Fifth Claims for Relief in the Second Amended Complaint itself, the Committee made reference to other paragraphs in the Second Amended Complaint which it impliedly contended establish the alleged agency. (*See* Memorandum of Law in Support of the Official Committee of Unsecured Creditors Opposition to Defendant General Electric Capital Corporation's Motion to Dismiss the Fourth and Fifth Claims of the Second Amended Complaint ("Comm.Br.")) at 10 n. 3 ("[T]he Second Amended Complaint is chock full of references to an existing agency relationship between Green Tree and GECC prior to the June 17, 1999 closing (*See* SAC ¶¶ 47–49, 61, 66–68)"). The first three of the cited paragraphs have been quoted above. SAC ¶ 61 alleges, in full:

> In May 1999, Lois' officers, including Robert Stewart—Lois' Chief Financial Officer—

*Discussion*

 It now seems to be clear, even if not expressly acknowledged, that the Committee is not relying on anything that anyone from GECC actually said to support its claims of fraud. The Committee's position, instead, seems to be that GECC is responsible for the acts of Green Tree, GECC's alleged agent, and that although the Committee did not mention the word "agent" or use words of similar import in the Second Amended Complaint (and indeed took those words out), it nevertheless alleged such—and to a degree sufficient to meet Rule 9(b) requirements.

The Court cannot agree. The Committee's focus on matters that Lois "understood" misses the mark, unless accompanied by allegations of any words or conduct by GECC that caused Lois to acquire any such understanding, and the Committee has not cited any authority suggesting that such could be established by the alleged principal's silence, at least in the absence of allegations, notably absent here, establishing a duty to speak.

GECC is correct in its observation (GECC Reply Br. 7) that *Green Tree's* discussions with Lois are immaterial to a finding of apparent authority, and, hence, the alleged agency. What is conspicuously lacking here are allegations that GECC, by its statements or actions, provided the apparent authority for Green Tree to act on GECC's behalf.[8] Green Tree statements

---

continually called James MacDonald III of GECC in Chicago, or Messrs. Thompson, Gouskos or Velzy of Green Tree in Atlanta, only to be informed that the loan was still in for review or that they needed another signature to approve the loan. In May 1999, obtaining a replacement for the Sanwa credit facility to fund its day-to-day operations became Lois' paramount concern. However, Lois had been lured so far down the path with the Lenders that it could not find alternative financing. Moreover, the acquisition strategy rapidly was becoming a faint memory as the S & S deal had disintegrated and other potential acquisitions were facing similar fates.

SAC ¶¶ 66–68 provide:

66. A comparison of the initial Agreement between Green Tree and Lois, dated February 23, 1999, the confidential correspondence between GECC and Green Tree dated May 14, 1999 and correspondence from Green Tree (which Lois understood to be on behalf of both Green Tree and GECC to Lois dated May 18, 1999 (Exhibits A, B and C respectively)) clearly demonstrates that GECC was either the controlling force behind or at least an equal partner with Green Tree in changing the terms of the February 23, 1999 Agreement to the far more onerous terms of the eventual loan agreement.

67. For example, as previously noted, the large increase in the base lending rate that appears in the May 18, 1999 offer reflects the large increase demanded by GECC as a condition of its participation.

68. Similarly, the Agreement of February 23, 1999 provided for a Closing Fee of .375% of $45,000,000 (of which Lois promptly paid a $50,000 deposit upon its signing of the Agreement) *and* annual fees of an additional $50,000 thereafter. It was GECC that demanded a Closing fee of $300,000 paid solely to GECC and an annual monitoring fee of $50,000 thereafter, again made payable solely to GECC. As a result, Green Tree's May 18, 1999 offer, which includes a dramatically increased demand for Closing fees, reflects the terms of GECC's conditions to participate in the loan. In fact, the entire $50,000 annual fee that Lois was forced to agree to pay was earmarked in its entirety for GECC's coffers.

(emphasis in original). The Court is constrained to agree with the point made by GECC, *see* Reply Memorandum of Law of Defendant General Electric Capital Corporation in Further Support of its Motion to Dismiss the Fourth and Fifth Claims of the Second Amended Complaint ("GECC Reply Br.") at 3–4, that none of this alleges an agency or documents one, and that, if anything, it underscores how GECC was acting on its own.

8. The Committee does not satisfy this requirement, in the Court's view, with the GECC letter of May 14, 1999 (SAC Exh. B), providing, in material part, that GECC was "pleased

in that regard would be insufficient. As the Second Circuit stated in *Karavos Compania Naviera S.A. v. Atlantica Export Corp.*, 588 F.2d 1 (2d Cir.1978):

> The agent cannot confer authority upon himself or make himself agent by saying that he is one.

*Id.* at 10. *See also FDIC v. Providence College*, 115 F.3d 136, 140 (2d Cir.1997) ("the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent"); *Peoples Westchester Savings Bank v. Ganc*, 705 F.Supp. 164, 169 (S.D.N.Y.1989) (to establish existence of apparent agency, third party must show that "words or acts of the *principal* communicated to the third party made it reasonable to believe that the agent possessed the authority to act for the principal" (emphasis added)).

In its opinion on the motions directed to the First Amended Complaint, which at least expressly alleged the existence of an agency, this Court noted that a conclusory allegation of an agency could not fairly be held to satisfy Rule 9(b). *See* 264 B.R. at 139 n. 177. That is so because where allegations of fraud are based on a claim of agency, the pleading of the alleged agency relationship must itself meet the requirements of Rule 9(b). As Chief Judge Mukasey of the district court stated in *Kolbeck v. LIT America, Inc.*, 923 F.Supp. 557 (S.D.N.Y.1996), *aff'd with unpublished opinion*, 152 F.3d 918, 1998 WL 406036 (2d Cir.1998):

> to confirm its interest in ... a $30.0 Million Secured Revolving Credit Facility ... to be *agented* by Green Tree Financial Corp." (Committee Br. at 12; emphasis in Committee Br., but not in original document). The Committee fails to focus sufficiently on the non-italicized words "to be." With those words, that statement was plainly forward

When an implied agency relationship is allegedly part of the fraud, "the circumstances constituting the fraud" on the part of the purported principal include both the facts constituting the underlying fraud and the facts establishing the agency relationship.

923 F.Supp. at 569. *See also Cohen v. Standard Bank Investment Corp.*, 1998 WL 782024, at *5–6 (S.D.N.Y. Nov.6, 1998) (Scheindlin, J.) (dismissing claim of fraud, under Fed.R.Civ.P. 9(b) and 12(b)(6), where the complaint failed to plead sufficient facts to establish the alleged agency relationship); *Gunderson v. ADM Investor Services, Inc.*, 85 F.Supp.2d 892, 906 (N.D.Iowa 2000) ("the pleading of allegations of agency must also meet the requirements of Federal Rule of Civil Procedure 9(b) where the allegations of fraud are based on a claim of agency").

*Leave to Replead*

■ When like issues were addressed with respect to the First Amended Complaint, this Court granted leave to replead. With the same issues having come up again, and with the Committee having presumably put forward the most it can, this Court believes that granting leave to replead again would be inappropriate. *See Kolbeck, supra*, 923 F.Supp. at 570 ("[B]ecause this is defendants' second motion to dismiss, and because plaintiffs already have been afforded an opportunity to make their allegations more specific, leave to replead is denied"). As GECC not unfairly observes,[9] when this Court granted

looking, and said nothing about the past or present—a matter of no small significance when most or all of the alleged fraud is alleged to have taken place in February and March.

9. See Memorandum of Law of Defendant General Electric Capital Corporation in Support of Its Motion to Dismiss the Fourth and

GECC's first motion but also granted leave to replead, it laid out a "detailed roadmap" for repleading in a manner that could satisfy Rule 9(b). The Committee failed to do so. This Court believes that, as in *Fidenas AG v. Honeywell Inc.*, 501 F.Supp. 1029, 1040 (S.D.N.Y.1981) (Goettel, J.), the problem is not in the pleading, but in the cause of action.

### Conclusion

The Fourth and Fifth Claims for relief are dismissed as against defendant GECC, without leave to replead.

So Ordered.

Fifth Claims of the Second Amended Complaint ("GECC Opening Br.") at 2.