**LEASING SERVICE CORPORATION,**
Plaintiff-Appellee,

v.

**Virgil B. JUSTICE and David F. Childers, Defendants-Appellants.**

No. 769, Docket 81–7794.

United States Court of Appeals,
Second Circuit.

Argued March 5, 1982.

Decided March 10, 1982.

Herman W. Lester, Combs & Lester, Pikeville, Ky. (Sherman H. Saiger, Saiger & Cohen, New York City, of counsel), for defendants-appellants.

Sol D. Bromberg, New York City, for plaintiff-appellee.

Before KAUFMAN and PIERCE, Circuit Judges, and HAIGHT, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

More than three centuries ago, in *The Merchant of Venice*, Shakespeare tellingly illustrated the evil of agreements which exact a "pound of flesh." Since that time, courts have grappled with the problem of oppressive contracts through the doctrine of unconscionability. Originating in Equity as a form of relief against the harshness of penal bonds,[1] this doctrine has been employed by courts to deny enforcement to harsh and unreasonable contract terms. Today we are asked to determine whether the liquidated damages provisions of several commercial leasing agreements are unconscionable as a matter of law. In reaching our decision, we must resolve a significant tension between two important goals served by rules governing the enforceability of liquidated damages clauses: rejecting clauses which operate as a penalty or forfeiture while upholding provisions which are reasonable attempts by parties to estimate the probable damages which would flow from a breach. This tension is an example of a more general conflict between contract law as a system of private ordering and contract law as an expression of the public interest. We turn now to the facts of this case.

This is an appeal from a judgment entered upon an order by Judge Leonard B. Sand, granting appellee Leasing Service Corporation's motion for summary judgment and deciding that Leasing Service could recover a total amount of $2,369,897.10, together with interest, from appel-

lants Virgil B. Justice and David F. Childers. We believe that Judge Sand properly declined to conclude that the terms of six equipment leasing agreements, pursuant to which Leasing Service sought to hold appellants liable as guarantors on unpaid balances, were unconscionable. Accordingly, we affirm the judgment of the district court. Since the application of contract principles guiding the interpretation of agreements challenged as unconscionable has long been an uncertain enterprise, we set forth our reasoning in some detail.

The present controversy is traceable to the failure of a series of what would appear at first blush to be ordinary commercial ventures involving the leasing of trucks and other heavy equipment but which do involve some complexities. In 1977, Cody Equipment and Supply Company, a construction and mining equipment dealer, entered into two separate equipment leasing agreements with Mountain Top Fuel Company. Pursuant to the terms of the two contracts, Cody Equipment leased a Wabco truck and other heavy equipment for rents of $181,153 and $178,603 respectively. In March, 1978, Cody and the Broas Mining Company signed three leasing agreements. The first contract provided for the lease by Cody to Broas of two trucks and one wheel loader for a total rent of $848,002. The second agreement concerned the lease of a loader to Broas for a total rent of $503,209. The third contract dealt with the leasing of a rotary drill and other pieces of heavy equipment in return for rental payments totalling $817,666. In January, 1979, Cody Equipment and Supply Company entered into a fourth leasing agreement with the Broas Mining Company for two trucks at a rental of $577,315.

All six lease agreements carefully defined the rights and duties of the lessor and lessee, and allocated various risks among the parties. For instance, the contracts denied

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. See Comment, *Liquidated Damages: A Comparison of the Common Law and the Uniform Commercial Code*, 45 Fordham L.Rev. 1349, 1349 (1977).

the lessees, Mountain Top Fuel Company and the Broas Mining Company, any option to purchase the equipment at the end of the lease term or to renew the lease for an additional period of time. The agreements further provided that the lessee in each instance would assume the risk of loss and damage to the trucks or machinery which were the subject matter of the lease. If the equipment were destroyed, or lost, or damaged beyond repair, the lessee would owe an amount equal to the fair market value of the equipment plus twenty-five percent of the aggregate amount of unpaid rent for the balance of the lease term (but in no event less than one hundred and fifteen percent of the total amount of unpaid rent). The contracts also contained detailed provisions governing the remedies available to the lessor upon default by the lessee. If the lessee failed to pay rent, the lessor had the right to accelerate the balance due, declaring that the entire amount of the unpaid rent was due and owing. In that event, the lessor, according to the lease terms, had the right to (1) recover the balance due; or (2) take possession of the equipment, and (a) retain the equipment and all prior payments of rent, or (b) retain all prior payments and sell the equipment at a public or private sale, applying any proceeds, less fifteen percent of the Total Rent required by the lease and expenses incurred in connection with the sale, to the amount owed by the lessee. It is this provision which has been the focus of vigorous disagreement in the instant case.

In addition to these contractual rights, Cody Equipment and Supply Company enjoyed the assurances of guarantees executed by appellants Virgil B. Justice and David F. Childers. Justice and Childers guaranteed the full performance of obligations assumed by Mountain Top and Broas pursuant to the lease agreements, making them liable to the lessor in the event of default by Mountain Top or Broas. Justice and Childers became the guarantors of still another obligation of the Broas Mining Company. In January, 1978, Broas executed a promissory note to the Credit Alliance Corporation in the amount of $68,520.

Justice and Childers guaranteed the full performance by Broas of its obligations arising from the promissory note.

Cody Equipment and Supply Company ultimately assigned all its rights under the six leasing agreements to the Leasing Service Corporation. The Credit Alliance Corporation also assigned all its rights against Broas under the promissory note and accompanying security agreement to Leasing Service. Eventually, both lessees, Mountain Top and Broas, experienced financial troubles making it difficult for them to fulfill their obligations. The parties executed extension agreements in July, 1980, to govern new due dates of the remaining payments. Both Broas and Mountain Top defaulted, failing to make the first payments under the extension agreements.

The equipment leased to Mountain Top and Broas was repossessed and sold at auction. At the time the auction was held, according to Leasing Service's deficiency calculations, Mountain Top and Broas owed a total of $1,961,592.55. The sale of the equipment at the auction yielded proceeds of $640,000. Leasing Service, however, did not apply the entire $640,000 to reduce the outstanding indebtedness. The Corporation subtracted a total of $30,924.95 from the proceeds to pay for the costs of repossession and sale. In addition, Leasing Service subtracted $465,892.58, which represented an amount equal to fifteen percent of the total rent. This amount was deducted because the lease agreements allowed the lessor, or his assignee, to subtract an amount equal to fifteen percent of the total rent from the proceeds of the sale of the equipment before applying the proceeds to reduce outstanding indebtedness. After deducting this amount from the sale proceeds, Leasing Service Corporation asserted that the deficiency, with late charges and attorneys fees, totalled more than $2,369,000.

Leasing Service commenced this action against the guarantors, Virgil B. Justice and David F. Childers, in the Southern District of New York pursuant to 28 U.S.C. § 1332, to recover the unpaid balance under the lease agreements and the promissory

note. The Corporation moved for summary judgment, filing a detailed schedule to support its claim for nearly $2,400,000 as a result of the lessees' defaults. Justice and Childers ultimately filed a conclusory two-page response executed by one of their attorneys, but no affidavits. This document raised the issue that the leasing agreements upon which Leasing Service based its claim were unenforceable because they were unconscionable as a matter of law. The response briefly made the assertion that the leases shocked the conscience because of the unequal bargaining position of the parties, and contained lopsided contractual terms, most notably the provision giving the lessor the right to deduct fifteen percent of the total rent from the proceeds of the sale of the equipment. Judge Sand granted Leasing Service's motion for summary judgment, holding Justice and Childers liable as guarantors to Leasing in the amount of $2,369,897.10.

On appeal, Justice and Childers contend that Judge Sand erred in granting summary judgment because, as we have noted, the lease agreements were unenforceable as unconscionable. Their principal claim is that the lease provisions permitting the lessor to deduct fifteen percent of the total rent from any proceeds recovered upon the sale of the equipment in calculating the amount of a deficiency imposes an unreasonable hardship on the lessees and the guarantors.

■ Determining the enforceability of a liquidated damages clause or other contractual provision governing a lessor's remedies upon · default reveals a tension between two often conflicting goals. On the one hand, courts will not enforce such a provision if it operates as a penalty or forfeiture clause. *See City of Rye v. Public Serv. Mut. Ins. Co.*, 34 N.Y.2d 470, 472–72, 358 N.Y.S.2d 391, 392–93, 315 N.E.2d 458, 459 (1974). The law is clear that contractual terms providing for the payment of a sum disproportionate to the amount of actual damages exact a penalty and are unenforceable. *See Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 393 N.Y.S.2d 365, 369, 361 N.E.2d 1015, 1018

(1977). The rationale for this principle is that contractual terms fixing damages in an amount clearly disproportionate to actual loss seek to deter breach through compulsion and have an *in terrorem* effect: fearing severe economic loss, the promisor is compelled to continue performance, while the promisee may reap a windfall well in excess of his just compensation. *Id. See generally* Comment, *Liquidated Damages: A Comparison of the Common Law and the Uniform Commercial Code*, 45 Fordham L.Rev. 1349, 1350 (1977).

■ On the other hand, courts uphold contractual provisions fixing damages for breach when the terms constitute a reasonable mechanism for estimating the compensation which should be paid to satisfy any loss flowing from the breach. *See Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., supra,* 393 N.Y.S.2d at 368, 361 N.E.2d at 1017; *Wirth & Hamid Fair Booking v. Wirth*, 265 N.Y. 214, 223, 192 N.E. 297, 301 (1934). These provisions have value in situations where it is difficult to estimate the amount of actual damages. From these principles, the standards for evaluating appellants' claim that the challenged lease terms are unconscionable are easily discernible. Contractual provisions fixing liquidated damages in the event of breach will not be voided as unconscionable or contrary to public policy if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. *See Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., supra.* If the amount fixed by contract is plainly or grossly disproportionate to the probable loss, the contractual provisions exact a penalty and will not be enforced. *See Equitable Lumber Corp. v. IPA Land Development Corp.*, 38 N.Y.2d 516, 381 N.Y.S.2d 459, 463, 344 N.E.2d 391, 395 (1976). *See also* Uniform Commercial Code § 2–302; *United States Leasing Corp. v. Franklin Plaza Apts.*, 65 Misc.2d 1082, 319 N.Y.S.2d 531 (1971).

■ Judging the challenged lease agreements against these standards, we agree with Judge Sand and reject appellants' con-

tention that the lease provision permitting Leasing Service Corporation to deduct an amount equal to fifteen percent of the total rent from the sale proceeds of the equipment is unconscionable. In addition to the contractual right to the receipt of rental payments, the lessor or assignee had a right, at the termination of the lease agreement, to return of the leased equipment or compensation for the failure to return the equipment. The contract's terms governing the liquidation of damages in the event of default provided for a public sale of the leased equipment. Such sale, clearly, would require the lessor to relinquish this reversionary interest. The value of the lessor's interest in the equipment at the termination of the lease would depend upon the physical condition of the equipment and the market conditions at that time. Since this value is incapable of precise estimation, *see Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., supra,* 393 N.Y.S.2d at 369, 361 N.E.2d at 1018, and may in fact fluctuate radically over time, the lease agreement's provision of fifteen percent of the total rent as a reasonable estimation of the residual value of the equipment is far from being unconscionable. Moreover, we note that appellants have not described in their two page response to Leasing Service's motion for summary judgment or in their brief on appeal, any facts supporting the conclusion that the amount deducted by Leasing Service does not bear a reasonable relation to the probable or actual loss representing the residual value relinquished upon sale.

For all these reasons, we decide that the provisions of the lease agreement are not unconscionable as a matter of law. Moreover, appellants have not presented any facts supporting a contention that the contracts are unenforceable by reason of unequal bargaining power among the parties or any other infirmity. As a result, Justice and Childers did not raise any genuine issue of material fact in opposing Leasing Service Corporation's motion for summary judgment. Federal Rules of Civil Procedure, Rule 56; *see Securities and Exchange Commission v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978); *Heyman v. Com-*

*merce and Industry Insur. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). Even resolving any doubts in favor of the parties opposing the motion, as a trial judge must when determining whether to grant a motion for summary judgment, *see Securities and Exchange Commission v. Research Automation Corp., supra,* 585 F.2d at 33; *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967), Judge Sand properly concluded that Justice and Childers did not raise any genuine issue of material fact and appropriately granted Leasing Service Corporation's motion for summary judgment.

Accordingly, the judgment of the district court is affirmed in all respects.