**MEDAFRICA LINE, S.P.A., Plaintiff,**

**v.**

**AMERICAN WEST AFRICA FREIGHT CONFERENCE; and its members America Africa Line Ltd., African Liner Service, Barber West Africa Line, Cameroon Shipping, S.A., Companhia Nacional De Navegacao (CNN), Delta Steamship Lines, Inc., Elder Dempster Lines, Ltd., Farrell Lines, Inc., Nigeria America Line Ltd., Torm West Africa Line, Westwind Africa Line Ltd., Compagnie Maritime Zairoise, S.A.R.L., Jeco Shipping Line Int'l., N.V., Afea Line Ltd., Defendants.**

**No. 83 Civ. 6660(MEL).**

United States District Court, S.D. New York.

Feb. 22, 1984.

Donovan, Maloof, Walsh & Kennedy, New York City, for plaintiff.

Brauner, Baron, Rosenzweig, Kligler, Sparber & Bauman, New York City, for defendants; Seymour H. Kligler, David R. Kay, David A. Brauner, New York City, of counsel.

LASKER, District Judge.

Plaintiff Medafrica Line, S.P.A. ("Medafrica") moves for a preliminary injunction staying the enforcement of an approximately $9 million assessment made against Medafrica by the American West African Freight Conference ("AWAFC") following AWAFC's finding that Medafrica had engaged in unlawful rebating practices. AWAFC is a steamship conference which is subject to regulations promulgated by the Federal Maritime Commission ("FMC") pursuant to Section 15 of The Shipping Act of 1916, 46 U.S.C. § 814.[1] The regulations require that each conference adopt a self-policing system to monitor conference members' compliance with the Shipping Act and FMC regulations. The self-policing system must provide for the appointment of an independent compliance monitor ("Neutral Body") which investigates possible violations and assesses penalties in the first instance, and for the appointment of an impartial arbitrator distinct from the Neutral Body, before whom a hearing can be obtained by any conference member found guilty of unlawful practices by the Neutral Body.

The Neutral Body for AWAFC is The Adherence Group, Inc. ("TAG"). Under the system adopted in AWAFC's conference agreement, a member line against whom a penalty is assessed by TAG must pay the assessment in full before it can obtain a hearing before an impartial arbitrator. Medafrica contends that payment of the $9 million assessment will put it out of business. It seeks a stay of the assessment while it pursues the complaint which it has filed with the FMC charging that the proceedings before TAG did not comport with FMC regulations and in particular that the pre-payment requirement deprives conference members of their right to a hearing before an impartial arbitrator as provided by FMC regulations.

To justify the issuance of a preliminary injunction[2] the movant must show:

"(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). As to irreparable harm, the financial data submitted by Medafrica show that Medafrica's continued financial viability would be in serious doubt if the $9 million assessment were collected.[3] This conclusion follows even if we accept defendants' analysis of the financial data, according to which Medafrica's net equity is $1.8 million (as opposed to the $582,000 net equity claimed by Medafrica).[4]

Moreover, while it is not clear that Medafrica has demonstrated a likelihood of success on the merits, Medafrica has certainly raised serious questions going to the merits which constitute a fair ground for litigation. The FMC regulations require that "fundamental fairness"[5] be afforded to conference members accused of violations, and specifically require that members against whom a penalty has been assessed by the Neutral Body be permitted to

---

1. *See* 46 C.F.R. § 528 (1983).

2. The defendants do not dispute this Court's authority to issue a preliminary injunction for the purpose of maintaining the status quo pending the outcome of proceedings before the FMC. *See State of Texas v. Seatrain International,* 518 F.2d 175 (5th Cir.1975); *Federal Maritime Commission v. Australia/U.S. Atlantic and Gulf Conference,* 337 F.Supp. 1032 (S.D.N.Y.1972).

3. *See* Affidavit of Captain Luciano Rossi, General Manager for Medafrica, dated September 21, 1983.

4. *See* Affidavit of Dominick J. Manfredi, Chairman of AWAFC, dated November 15, 1983.

5. *See* 46 C.F.R. § 528.2(e) (conference agreement must include "a statement that fundamental fairness will be afforded all members accused of committing a breach..."); *see generally State Marine Lines Inc. v. Federal Maritime Commission,* 376 F.2d 230 (D.C.Cir.1967).

obtain a hearing before an impartial arbitrator on the charges against them.[6] Medafrica's claim that requiring pre-payment of the assessment is inconsistent with these regulations is bolstered by the conclusions of TAG itself, which in proposing changes to the self-policing provisions of the conference agreement has stated:

> "We also question whether fundamental fairness could be afforded if as under the present Article 16(h) [of the conference agreement] an accused line found guilty of violations would literally, and unrealistically, have to post millions of dollars as security before having the required right to appeal."[7]

Moreover, defendants' claim that Medafrica will not be damaged by pre-payment of the assessment because it will be held in a separate account pending the arbitrator's determination is altogether beside the point, because Medafrica's challenge to the pre-payment requirement is based upon the contention that an arbitrator's decision will be meaningless if Medafrica has already been forced out of business by paying the assessment. Thus, in the absence of any authority on point, the question of the validity of the pre-payment requirement clearly presents a fair ground for litigation.[8]

Medafrica's contention that the $9 million assessment does not constitute liquidated damages as required by the conference agreement,[9] but instead constitutes an invalid punitive award, also presents a question whose merit cannot readily be rejected or confirmed. Medafrica contends that only about $5.8 million of the $9 million assessment can be accounted for as a remedial assessment, and that the additional charges were assessed based upon earlier suspected violations as to which Medafrica had already entered into a settlement and paid a fine.[10] The defendants have not directly answered these assertions, but contend that the assessment constitutes permissible liquidated damages in light of the difficulty of calculating the actual damages resulting from rebating. In view of the rather fluid standards which govern the determination whether a particular award is permissible as liquidated damages or instead represents an invalid penalty,[11] this

---

**6.** *See* 46 C.F.R. § 528.2(d) (conference self-policing systems must include "a procedure for adjudicating breaches which affords accused members the right to a hearing before an impartial arbitrator. The impartial arbitrator shall adjudicate such claims solely and finally, either initially or upon review de novo on the record of an initial determination by the policing authority....").

**7.** The proposed change would permit accused members to invoke their right to arbitration by posting a maximum bond of $200,000, rather than paying the full amount of the penalty. *See* Exhibit A to Affidavit of Pierluigi Carrodano, President of Medafrica, dated September 26, 1983, at p. 3).
The proposals from which the language quoted in the text is taken are not themselves part of the record before the Court. The quote appears instead in a letter from Medafrica's Washington counsel, Carlos Rodriquez, to Dominick Manfredi, AWAFC's chairman, which is attached as Exhibit 1 to the affidavit of Pierluigi Carrodano dated September 9, 1983. The defendants do not dispute that TAG made the quoted statement, or the accuracy of the quotation.

**8.** Although it is true that the FMC has approved the conference agreement as a whole, which

includes the pre-payment provision, defendants do not argue that such approval precludes the FMC from finding that the provision deprives an accused member of fundamental fairness in a particular case.

**9.** *See* Article 16(g) of the conference agreement, attached as Exhibit A to the affidavit of Dominick Manfredi dated September 19, 1983.

**10.** *See* Reply Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction, pp. 11–12.

**11.** *See Leasing Service Corp. v. Justice,* 673 F.2d 70, 73 (2d Cir.1982):
> "Contractual provisions fixing liquidated damages in the event of breach will not be voided as unconscionable or contrary to public policy if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable of or difficult of precise estimation. If the amount fixed by contract is plainly or grossly disproportionate to the probable loss, the contractual provisions exact a penalty and will not be enforced" (citations omitted).

question also presents a fair ground for litigation.

The question remains whether the balance of hardships tips decidedly in favor of Medafrica. On the one hand, Medafrica faces a serious threat of insolvency prior to a final determination of the merits of its claims if it must pay the assessment up front. On the other, the defendants have presented strong evidence of the harm that rebating does to member lines who obey the law,[12] and it would work a significant injustice to AWAFC if Medafrica's financial position should deteriorate for any reason during the course of FMC proceedings so that if the assessment were upheld it would be uncollectible. The potential hardship to the defendants is heightened by the fact that Medafrica has not argued to this Court that the charges against it are untrue.

We believe, however, that the hardship to Medafrica of being put out of business prior to a final decision on the charges against it would decidedly outweigh the harm defendants might suffer if they fail to collect the total amount of the assessment, and that Medafrica is therefore entitled to issuance of the injunction it seeks. Accordingly, the preliminary injunction is granted, on condition that Medafrica post as security a bond in as large an amount as its financial circumstances permit.

Submit order on notice.

**12.** *See* Affidavit of Thomas R. Tarbox, Senior Vice President for Mediterranean and West African Service of defendant Farrell Lines, Inc., dated September 19, 1983; Affidavit of Fridtjof Naess, General Line Manager of defendant Barber West Africa Line, dated September 19, 1983.