**PACIFICORP CAPITAL, INC., Plaintiff,**

v.

**TANO, INC., Defendant.**

No. 93 Civ. 0322 (AGS).

United States District Court, S.D. New York.

Feb. 28, 1995.

Michael E. Geltner, Washington, DC, for plaintiff.

Russo & Gallgano, White Plains, NY, for defendant.

## OPINION AND ORDER

SCHWARTZ, District Judge:

This action involves a claim of breach of a lease under which plaintiff, PacifiCorp Capital, Inc. ("PacifiCorp"), leased computer equipment to defendant, Tano, Inc. ("Tano"). Pending before the Court are plaintiff's motion for summary judgment and defendant's cross motion to dismiss the complaint. For the reasons set forth below, plaintiff's motion for summary judgment is granted and defendant's motion to dismiss is denied.

### I. *BACKGROUND*

PacifiCorp is a Virginia corporation with its principal place of business in Virginia. It is the successor in interest by merger to Ceres Capital corporation. Defendant is a New York corporation with its principal place of business in New York.

On October 20, 1989, PacifiCorp and Tano entered into a master lease agreement (the "Lease") under which plaintiff agreed to lease certain IBM computer equipment to defendant in return for monthly rental payments.

Section 16 of the lease provided that failure to make any payment when due, unless cured within five days of notice by the lessor, constituted a default. The lease further provided that in the event of default, Tano as lessee, would be liable for unpaid rentals to the date of the declaration of default, plus the stipulated loss value of the equipment as set out in the Lease Schedules. Tano would also be liable for all reasonable attorney's fees and court costs incurred in collecting the amount due.

On October 20, 1989, PacifiCorp and Tano entered into schedule 001 to the Lease, under which Tano leased certain IBM computer equipment at a monthly rental of $1,930 plus the applicable sales tax of $110.98 per month for a period of 48 months.

On December 26, 1989, the parties entered into schedule 002 to the Lease, covering an IBM printer. Defendant was required to pay a monthly rental of $195 per month plus the applicable tax of $13.16 per month for three months, with the same rent to continue on a month to month basis until the return of the equipment.

It is not disputed that Tano failed to make payments under either schedule after March 1992 and also failed to pay two invoiced late charges. On January 18, 1993, PacifiCorp sent notice of default to Tano; the notice declared the lease in default if Tano failed to cure. Defendant did not pay the amounts due [1] and on January 18, 1993, plaintiff filed the complaint in this action.

Plaintiff alleges that on January 18, 1993, the date of the declaration of default, defendant owed $55,589.45, the stipulated loss value of the equipment under schedule 001 (71% of the total lessor's price of $78,295). Plaintiff further alleges that defendant owed $22,-

---

**1.** Subsequent to the default date, Tano made a payment for March, 1992 rent and sales tax of $2,060.31 and late charges of $525.38 due under schedule 001. Edlow declaration, p. 4.

684.70 under schedule 001 for the missed payments from March 1992 through January 1993 and $2,081.60 under schedule 002 for overdue rental payments for the months of April 1992 through January 1993. Plaintiff, thus, alleges damages of $78,274.15, plus attorney's fees of $2,574.70 and court costs of $120, a total of $80,068.85.

Defendant moves to dismiss on the grounds that (1) the complaint fails to state a claim against defendant upon which relief can be granted, (2) Plaintiff failed to serve predicate notices, specifically a separate notice to cure and notice of default, thereby failing to meet a condition precedent to the commencement of this action, and (3) the amount in controversy is alleged to be less than fifty thousand dollars exclusive of interest and costs, and, accordingly, that this Court lacks jurisdiction of this diversity action.

## II. *DISCUSSION*

### A. Summary Judgment Standard

■■■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) The Second Circuit has stated that a "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case ..." *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1222–3 (2d Cir.1994). The burden of proof, however, lies with the moving party and we must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Id.* The moving party must satisfy its burden of demonstrating the absence of a genuine issue of material fact, which can be done by a showing that there is an absence of evidence to support the nonmoving party's case (and as discussed above, all ambiguities are resolved in the nonmoving party's favor). *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by a "showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552. The undisputed record in this action establishes that plaintiff is entitled to judgment as a matter of law.

### B. Subject Matter Jurisdiction

■■■ Defendant, by its motion to dismiss, challenges this Court's subject matter jurisdiction. Jurisdiction of this action is grounded in diversity, i.e. the parties are alleged to be citizens of different states and the amount in controversy is stated to exceed $50,000, exclusive of interest and costs. 28 U.S.C. § 1332. It is not disputed that PacifiCorp is a citizen of Virginia and that Tano is a citizen of New York. The alleged amount in controversy is deemed to have met the statutory standard if at the time the action is commenced plaintiff claims in good faith an amount that exceeds the minimum required. *See, Peoples Westchester Savings Bank v. Ganc*, 705 F.Supp. 164, 166 (S.D.N.Y.1989). We are constrained to accept the amount claimed by plaintiff, "unless it appears to a legal certainty that [the] claim is for less." *Id.*

PacifiCorp commenced the present action on January 18, 1993, claiming damages in excess of $80,000. This figure includes the stipulated loss value of the leased equipment as set forth in Section 17 of the lease. Defendant contends that the stipulated loss provision is not a liquidated damages clause, but is, in fact, a penalty voidable by the Court. It is undisputed that if we void the putative liquidated damages clause as a matter of law, the remaining damages do not exceed the minimum jurisdictional amount and, accordingly, the Court will lack subject matter jurisdiction. Thus, we now turn to the validity of the clause.

### C. The Liquidated Damages Clause is Not a Penalty

■■■ It is well-settled that New York courts have upheld liquidated damage provi-

sions so long as the "amount liquidated bears a reasonable proportion to the probable loss and the amount of the actual loss is incapable or difficult of precise estimation." *Leasing Service Corporation v. Justice*, 673 F.2d 70, 73 (2nd Cir.1982). In addition, the provision must not be illegal or contrary to public policy. *Leasing Service Corporation v. Graham*, 646 F.Supp. 1410, 1419 (S.D.N.Y.1986). If, however, the amount liquidated is plainly disproportionate to the probable loss, the provision will be deemed an unenforceable penalty. *Justice*, 673 F.2d at 73. These factors are measured as of the time the parties entered into the contract, not at the time of the breach. *Rattigan v. Commodore Intern. Ltd.*, 739 F.Supp. 167, 169 (S.D.N.Y. 1990).

■ Whether a provision constitutes a valid liquidated damages provision or a penalty, is a matter of law to be decided by the court. *Vernitron Corporation v. CF 48 Associates*, 104 A.D.2d 409, 478 N.Y.S.2d 933, 934 (Second Dep't 1984). Thus, to determine whether Section 17 of the Lease is a valid liquidated damages clause or a penalty, requires that inquiry be made as to whether the stipulated loss value claimed bears a reasonable relationship to the probable loss because plaintiff's projected loss may have been projected to be incapable of estimation.

In this action, Tano argues that Section 17 of the Lease constitutes a penalty because it is intended to compel performance and provides a windfall to PacifiCorp. More precisely, Tano contends that because only a few payments remained under the Lease, the provision affords plaintiff excessive damages, in light of the small number and aggregate of rental payments remaining to come due at the time of the breach.

■ Based on a careful review of the parties submissions and the Lease itself, we conclude that the provision in question is not "grossly disproportionate" to the parties reasonable estimation of the probable loss that would result from a default (calculated at the time the parties entered into the lease). The value of a lessor's interest in leased equipment at the expiration of a lease depends upon "the physical condition of the equipment and the market conditions at that

time." *Justice*, 673 F.2d at 74. (holding a lease agreement's provision of fifteen percent of the total rent for trucks and heavy machinery not unconscionable because the value depends upon the physical condition of the equipment and market conditions at the end of the lease term which are incapable of precise estimation). In the instant case, the value of the computer equipment at termination of the lease depends upon its physical condition and market conditions at that time. Because these values are of such uncertain nature and any calculation of damages would depend on these figures, courts are inclined to view a damage provision in a lease agreement as a liquidated damages clause rather than a penalty.

Tano has not submitted any evidence to suggest that one party had unequal bargaining power. *Rattigan*, 739 F.Supp. at 172. (stating that the parties bargaining power is a factor when determining if one side is exacting an unconscionable penalty). Both PacifiCorp and Tano were experienced negotiators involved in a lease at arms length, making it more unlikely that the provision was to constitute a penalty. *Id.*

■ The foregoing factors compel us to conclude that the loss provision bears a reasonable relationship to the probable harm flowing from the breach, in light of the difficulty in ascertaining damages at the time of execution of the computer leasing arrangement. Accordingly, we are constrained to accept plaintiff's allegation of damages in the amount of $80,968.85, and, to accept subject matter jurisdiction over this action.

### D. Combined Notice to Cure and Declaration of Default is Sufficient

Defendant contends that plaintiff's notice to cure and notice of default, dated January 18, 1993, were ineffective, rendering this action subject to dismissal. Defendant alleges (1) the failure of the combined notice to set forth the precise amount Tano was obligated to pay PacifiCorp in order to effectuate a cure; and (2) plaintiff failed to serve a separate declaration of default five days after sending the notice to cure, as required by the Lease.

 

## 1. Notice to Cure

We first address the effectiveness of the notice to cure. In *NL Industries, Inc. v. PaineWebber, Inc.*, 720 F.Supp. 293 (S.D.N.Y.1989), the court held that in order for a notice to cure to comply with New York law, it must set forth the substance of each alleged default and specify the actions necessary to cure. The court stated, "[i]n a commercial setting, if the notice [to cure] refers either to the specific termination provision or summarizes its terms, that is sufficient to put the lessee on notice that its leasehold is in jeopardy." *Id.* at 300. In our view, plaintiff has satisfied this standard.

 In the present action, the notice to cure identified the lease and the applicable sections, and notified defendant of the default. The notice also summarized the provision, stating that the default arose from defendant's failure to have paid rent and late charges. Finally, the notice set forth that Tano could cure the default "by paying all arrears and invoiced late charges."

That PacifiCorp failed to state the precise amount to be paid in order to cure Tano's imminent default does not establish a failure to have met the standard set forth in *NL Industries*. Based on the foregoing, we conclude that PacifiCorp having referred to a specific provision in the Lease and having summarized its terms, has adequately placed Tano on notice that if it did not pay "all arrears and unpaid late charges" it would be in default. Accordingly, we find the notice to cure to have been effective.

## 2. Declaration of Default

 The January 18th letter stated that if Tano did not cure within five days, "the lease [was] declared to be in default." The Lease does not specify what form the declaration must take, nor does it require plaintiff to separately communicate a declaration of default. Accordingly, we find the combined notice to cure and declaration of default to be satisfactory.

## III. CONCLUSION

Plaintiff's motion for summary judgment is granted; defendant's motion to dismiss is denied. The Clerk of the Court is directed to enter judgment in favor of plaintiff in the amount of $80,068.85.

SO ORDERED.