**KAHUNA GROUP, INC., Plaintiff,**

v.

**SCARANO BOAT BUILDING, INC., Richard Scarano and John Scarano, individually, Port Welding Services, Inc., a/k/a Port Welding Fabricating and Machining, and Steven B. Barber, individually, Defendants.**

No. 95–CV–955.

United States District Court,
N.D. New York.

Sept. 17, 1997.

Sherrin & Glasel Law Firm, Albany, NY (Jeffrey J. Sherrin, of counsel), for Plaintiff.

Offices Of Charles R. Harding, Glenville, NY (Charles R. Harding, of counsel), for Defendants Scarano Boat Bldg., Inc., John Scarano and Richard Scarano.

Friedman & Manning Law Firm, Delmar, NY (Charles P. Manning, of counsel), for Defendants Port Welding Services and Steven Barber.

## MEMORANDUM-DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This case is essentially an action for breach of contract and fraudulent inducement to contract arising out of an agreement to construct a 149 passenger excursion vessel. Defendants include Scarano Boat Building, Inc. ("Scarano") and Port Welding Services, Inc. ("Port Welding"), boat building and shipyard welding corporations located at the Port of Albany, and their officers. The Complaint seeks to hold Defendants liable on several theories, including breach of contract, breach of implied warranties, breach of express warranties, and negligence. In addition, Plaintiff has sued the individual defendants, Richard Scarano, John Scarano, and Steven Barber for fraud, conspiracy to defraud, and prima facie tort.

In February, 1992, Kahuna Group, Inc., began looking for a boat builder to design and construct a passenger excursion vessel for use in Plaintiff's business; Kahuna provides day and hourly excursion services to the public from Red Bank, New Jersey. In February, 1993, Todd Sanders, President of the Kahuna Group, met with John and Richard Scarano at their facilities in Albany, New York. At that meeting, the Scaranos introduced Sanders to their "fabricator," Steve Barber. According to Plaintiff, John and Rick Scarano and Steve Barber explained to Sanders that they did a lot of boat work together and that they had just built a steel crane barge together. Barber then took Sanders to a nearby building he identified as his and gave Sanders a tour of his facilities.

During the course of the negotiations with Defendants, Kahuna alleges that Defendants fraudulently induced Kahuna to contract with Defendants for construction of the vessel the "Big Kahuna." Specifically, Todd Sanders alleges that John Scarano and Steve Barber represented to him that John Scarano was a naval architect, when in fact John Scarano had no naval architecture education. (Sanders Aff. ¶ 20). Sanders also alleges that "[i]n spite of the repeated representations by the Scaranos and Steve Barber about how much they worked together in boat construction and design, it turned out that they had not worked together at all." (Sanders Aff. ¶ 21, citing John Scarano Dep. at 30). Sanders also states that contrary to Defendants' representations to him, Scarano Boat Building had not done any work on any steel vessel prior to the Kahuna project, (Sanders Aff. ¶ 22, citing J. Scarano Dep. at 34–35), and Steve Barber was completely unfamiliar with Coast Guard regulations and American Bureau of Shipping standards concerning boat construction. (Sanders Aff. ¶ 29, citing Barber Dep. at 268).

On February 18, 1993, Scarano and Kahuna entered into an agreement in which Scarano agreed to construct a Coast Guard Certified 149 passenger excursion vessel, 60 feet long, 24 feet wide, and 30 inches draft, to be completed and delivered to Red Bank, New Jersey no later than May 21, 1993, for a cost of $233,000. Because Plaintiff's business was seasonal, a contract rider was executed, which provided for liquidated damages in the event the Big Kahuna was not completed by May 21, 1993.

The vessel was not completed until June 24, 1993. In addition, during the sea trials of the Big Kahuna a number of problems were discovered, including severe vibrations from the engines and excessive "bow down trim." The problems with the vessel resulted in the immediate revocation of the Coast Guard's interim certificate of seaworthiness. As a consequence, Kahuna was required to make extensive repairs to the vessel in order to make the Big Kahuna seaworthy.

Presently before the Court are Defendants' Motions for Summary Judgment.

## II. DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It is the substantive law that will determine what facts are material to the outcome of a case. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential. Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994).

Here, Defendants seek dismissal of the Complaint for the following reasons: (1) Port Welding was not a party to the contract; (2) There is no evidence of intent to defraud or conspiracy to defraud; (3) Plaintiffs' *prima facie* tort claim is without support; (4) The Scaranos have no personal liability; (5) Plaintiff cannot recover for any breach of warranty; (6) Plaintiff's negligence claim is without support; (7) The liquidated damages clause is unenforceable; and (8) Punitive damages are not warranted.

The Court will address Defendants' arguments seriatim.

### A. Port Welding's Contractual Liability

■ Port Welding and Steve Barber (hereinafter the "Port Welding Defendants") assert that they have no liability because Plaintiff only had a contractual relationship with Scarano Boat Building, and not with Port Welding. As Plaintiff properly notes, however, simply because Kahuna Group had a written contractual relationship with Scarano Boat Building does not preclude a contractual relationship with the Port Welding Defendants. This relationship may be based, *inter alia*, on an oral contract, functional privity, or Defendants' joint venture.

After reviewing the record here, it is clear that Plaintiff has put forth sufficient evidence to show that, under all of the aforementioned theories of contractual liability, genuine issues of material fact exist. For example, Todd Sanders states that he had an oral agreement for the Scarano and Port Welding Defendants *together* to design and build the boat. (Sanders Aff. ¶ 14). Sanders also states that he understood the written agreement to encompass the Port Welding Defendants as well, particularly because Sanders was never told that the Port Welding Defendants were not part of the Scarano operation.

■ In their motion papers, the Port Welding Defendants incorrectly assert that the written contract precludes Plaintiff from offering evidence of an oral agreement between Kahuna Group and Port Welding. As the New York Court of Appeals has stated, "it has never been held that a written agreement between two parties excludes proof of an additional parol agreement between one of those parties and a third party." *Traders' Nat'l Bank v. Laskin*, 238 N.Y. 535, 542, 144 N.E. 784 (1924).

■ At a minimum, Plaintiff states that it considered Port Welding and Scarano to be joint venturers. Under New York law, a joint venture "is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership." *Gramercy Equities Corp. v. Dumont*, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908, 911,

531 N.E.2d 629, 632 (1988). A joint venture exists where

> the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their benefit. . . .

*Steinbeck v. Gerosa*, 4 N.Y.2d 302, 175 N.Y.S.2d 1, 13, 151 N.E.2d 170, 178 (1958) (*quoting Hasday v. Barocas*, 10 Misc.2d 22, 28, 115 N.Y.S.2d 209, 215 (N.Y.Sup.1952)).

■ Specifically, in order to form a joint venture (1) two or more persons must enter into an agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses. *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir.1990); *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F.Supp. 1184, 1201 (S.D.N.Y.1996).

Here, Plaintiff cites to ample evidence supporting its theory of joint venturer liability. According to Plaintiff, the Scaranos approached Port Welding and secured their involvement in the project before Plaintiff contracted with either of them. In fact, Scarano Boat Building never even considered another fabricator other than Port Welding. (Sanders Aff. ¶ 17, *citing* J. Scarano Dep. at 42–43). Moreover, the Scaranos introduced Steve Barber as their "fabricator." (Sanders Aff. ¶ 10). According to Plaintiff, John and Rick Scarano and Steve Barber explained to Sanders that they did a lot of boat work together and that they had just built a steel crane barge together. Barber even took Sanders to a nearby building and gave Sand-

ers a tour of his facilities. (Sanders Aff. ¶ 12).

In addition, each defendant exercised control over the project and committed equipment and resources to its completion. The Scaranos devised the specifications and design of the vessel and did the painting and systems work. However, during the initial stages of the construction of the vessel all work was done by Port Welding, including all of the welding and fabrication services. Furthermore, Plaintiff asserts that the fee charged for the vessel was based on joint discussions between the Scaranos and Barber regarding cost of materials and the size and weight of the vessel; indeed, because the weight of the vessel was subject to significant variation, both parties shared in the risk of loss from the venture.[1] (Sanders Aff. ¶ 17).

Finally, Plaintiff argues that it worked more closely with the Port Welding Defendants than the Scaranos. Sanders states that he worked with Steve Barber very day he was present at the site; and was even provided with the use of an office at Port Welding's facilities. (Sanders Aff. ¶ 18). Moreover, Plaintiff made payments directly to Port Welding.

Based on the foregoing, the Court concludes that a genuine issue of material fact exists as to whether Port Welding had a contractual relationship with Kahuna Group. Thus, summary judgment is unwarranted on this issue.

**B. Fraud and Conspiracy to Defraud**

■ Defendants argue that summary judgment is appropriate as to Plaintiff's fraud claims because the representations made to Todd Sanders were true, and that, in any event, the representations were not made with the intent to deceive or to induce Kahuna to enter into a contract.

■ Under New York law, acts that give rise to a breach of contract claim may also support a distinct claim for fraud if the defendant misrepresents a presently existing

---

1. According to Plaintiff, Port Welding based its cost on an erroneous prediction of the weight of the vessel; a figure that was actually understated by almost 70%. (Sanders Aff. ¶ 17). The Coast

Guard determined that Defendants had underestimated the weight of the boat by over 57,000 pounds. (Sanders Aff., Ex. B).

fact. *PI, Inc. v. Quality Products, Inc.*, 907 F.Supp. 752, 760–61 (S.D.N.Y.1995) (citing cases). To recover under a fraud theory, plaintiff must prove the following elements: (1) misrepresentation of a material fact; (2) falsity of the representation; (3) scienter; (4) reasonable reliance; and (5) damages. *May Dep't Stores Co. v. Int'l Leasing Corp., Inc.*, 1 F.3d 138, 141 (2d Cir.1993); *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir. 1980).

Here, the record shows that genuine issues of material fact exist as to whether Defendants misrepresented a material fact, which Plaintiff relied upon to its detriment. Specifically, Todd Sanders alleges that John Scarano and Steve Barber represented to him that John Scarano was a naval architect, when in fact John Scarano had no naval architecture education.[2] (Sanders Aff. ¶ 20). Sanders also alleges that "[i]n spite of the repeated representations by the Scaranos and Steve Barber about how much they worked together in boat construction and design, it turned out that they had not worked together at all." (Sanders Aff. ¶ 21, *citing* John Scarano Dep. at 30). Sanders also states that contrary to Defendants' representations to him, Scarano Boat building had not done any work on any steel vessel prior to the Kahuna project, (Sanders Aff. ¶ 22, *citing* J. Scarano Dep. at 34–35), and Steve Barber was completely unfamiliar with Coast Guard regulations and American Bureau of Shipping standards concerning boat construction, (Sanders Aff. ¶ 29, *citing* Barber Dep. at 268).

 As to Defendants' intent to defraud, "[t]o satisfy the scienter requirement, a plaintiff need not allege facts which show the defendant had a motive for committing fraud, as long as the plaintiff ... adequately identifies the circumstances indicating conscious behavior by the defendants." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989). The requisite strong inference as to fraudulent intent may be established by factual allegations that show Defendants had both motive and opportunity to commit fraud or that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See*

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268–69 (2d Cir.1993).

Based on a careful review of the record here, the Court concludes that a genuine issue of material fact exists as to the veracity of the representations made by Defendants and the intent with which they were made. Thus, Plaintiff's fraud and conspiracy to defraud claims are properly left for the trier of fact.

### C. Prima Facie Tort

 Defendants seek summary judgment with regard to Plaintiff's claim for *prima facie* tort on the basis that Defendants' allegedly wrongful acts were not motivated *solely* by malice.

 The elements for *prima facie* tort are: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful. *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990) (*citing Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459, 467 (1983)). The touchstone is "disinterested malevolence", meaning that Plaintiff cannot recover unless Defendants' conduct was not only harmful, but done with the sole intent to harm. *Burns*, 464 N.Y.S.2d at 721, 451 N.E.2d at 467–68. The Second Circuit has stated that motives other than disinterested malevolence, "such as profit, self-interest, or business advantage" will defeat a *prima facie* tort claim. *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir.1985).

Here, Plaintiff has provided sufficient evidence to raise a genuine issue as to Defendants' "disinterested malevolence." As Plaintiff points out, Defendants' alleged tortious conduct continued past the point where they stood to gain financially from continuing to injure Plaintiff.

 Defendants incorrectly assert that a claim for *prima facie* tort cannot be plead as an alternative claim for relief. While double

---

**2.** In fact, Plaintiff submitted evidence that shows that John Scarano actually failed out of the State University of New York's Maritime College after only one year. (Sanders Aff., Ex. C).

recovery is not allowed, " 'where a traditional tort remedy exists, a party will not be foreclosed from pleading, as alternate relief, a cause of action for *prima facie* tort.' " *Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876, 882 (2d Cir.1988) (*quoting Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985)).

### D. Scarano Defendants' Personal Liability

■ John and Richard Scarano argue that as a matter of law they are not personally liable under the contract rider for return of deposit monies or for the graduated late penalty. The rider, dated March 17, 1993 (the "Rider"), states:

> *PERSONAL GUARANTEE:* The undersigned personally guarantee, on behalf of the Builder, Scarano Boat Building, Inc., that they will be personally liable for the return of any deposit monies paid by the Owner in the event a default occurs requiring a refund.

(Def's Rule 7.1(f) Statement, Ex. 6). Based on the unambiguous wording of the Rider, John and Richard Scarano are personally liable for the return of any deposit monies should they be found to have defaulted. However, the Rider does not state that John and Richard Scarano are personally liable for any other contractual remedies, nor has Plaintiff provided any evidence that raises a genuine issue of material fact as to this issue.

Accordingly, the Court concludes that no genuine issues of material fact exist as to John and Richard Scarano's personal liability under the March 17, 1993 rider. The March 17, 1993 rider does not impose personal liability on John and Richard Scarano for contract damages other than the return of deposit monies.

■ As to Defendants' argument that the graduated late penalties are not applicable against Scarano Boat Building because Defendants were not provided a "reasonable extension of time," the Court finds that this issue is presently disputed and thus not amenable to summary judgment.

### E. Breach of Warranty

■ The Port Welding Defendants seek summary judgment on Plaintiff's claims for breach of express and implied warranties. Essentially, they argue that Port Welding had no contractual obligations to Plaintiff, that Port Welding is not a "seller" pursuant to the Uniform Commercial Code, and even if Port Welding is a seller, it did not receive notice of the welding deficiencies.

Port Welding's arguments carry little weight. First, as the Court previously found, there is sufficient evidence to support Plaintiff's theory that Port Welding actually contracted with Plaintiff. Second, there is sufficient evidence in the record to conclude that Port Welding was a "seller" of the *Big Kahuna.* See N.Y. U.C.C. § 1–103. During the initial stages of the construction of the vessel all work was done by Port Welding, who completed all of the welding and fabrication services. Moreover, Plaintiff made payments directly to Port Welding.

As to Port Welding's assertion that insufficient notice was provided, there is adequate evidence in the record to demonstrate that the issue of notice is factually disputed. (*See, e.g.,* Plf's Rule 7.1(f) Statement ¶ 19). Thus, the Court finds that a genuine issue of material fact exists as to Port Welding's liability to Plaintiff for possible breach of warranties.

### F. Negligence

■ The Port Welding Defendants seek dismissal of the negligence claim against them on the basis that any negligence claim is barred by the February 1993 contract. Oddly, it also appears to be the Port Welding Defendants' position that they are not a party to any contract with Plaintiff. *See* Part A, *supra.* On this issue the Port Welding Defendants cannot "eat their cake and have it to." If they are not a party to any contract with Plaintiff, as they strenuously argue, then Plaintiff's negligence claim is viable. If Defendants are entitled to proffer contradictory positions, surely Plaintiff is entitled to do the same. In any event, a party is not barred from litigating alternate theories of liability. Thus, Plaintiff's negligence claim will not be dismissed.

### G. Liquidated Damages

■ Defendants seek dismissal of Plaintiff's claim for the graduated late payment [3] by arguing that the graduated late payment is an unconscionable and thus illegal penalty.

■ Determining the enforceability of a liquidated damages clause reveals a tension between two often conflicting goals. Generally, courts will not enforce such a provision if it operates as a penalty or forfeiture clause. *See City of Rye v. Public Serv. Mut. Ins. Co.*, 34 N.Y.2d 470, 358 N.Y.S.2d 391, 392–93, 315 N.E.2d 458, 459 (1974). The law is clear that contractual terms providing for the payment of a sum disproportionate to the amount of actual damages exact a penalty and are unenforceable. *See Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 393 N.Y.S.2d 365, 369, 361 N.E.2d 1015, 1018 (1977). As the Second Circuit has noted:

> The rationale for this principle is that contractual terms fixing damages in an amount clearly disproportionate to actual loss seek to deter breach through compulsion and have an in terrorem effect: fearing severe economic loss, the promisor is compelled to continue performance, while the promisee may reap a windfall well in excess of his just compensation.

*Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir.1982) (citation omitted)

Nevertheless, courts uphold contractual provisions fixing damages for breach when the terms constitute a reasonable mechanism for estimating the compensation which should be paid to satisfy any loss flowing from the breach. *Leasing Service Corp.*, 673 F.2d at 73; *Truck Rent–A–Center*, 393 N.Y.S.2d at 368, 361 N.E.2d at 1017; *Wirth & Hamid Fair Booking v. Wirth*, 265 N.Y. 214, 223, 192 N.E. 297, 301 (1934). These provisions have value in situations where it is difficult to estimate the amount of actual damages.

■ Accordingly, "[c]ontractual provisions fixing liquidated damages in the event of breach will not be voided as unconscionable or contrary to public policy if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *Leasing Service Corp.*, 673 F.2d at 73 (*citing Truck Rent–A–Center*, 393 N.Y.S.2d at 368, 361 N.E.2d at 1017); *see also Equitable Lumber Corp. v. IPA Land Development Corp.*, 38 N.Y.2d 516, 381 N.Y.S.2d 459, 463, 344 N.E.2d 391, 395 (1976); Uniform Commercial Code § 2–302.

■ When determining the reasonableness of a liquidated amount, a court should give due consideration to the nature of the contract and the attendant circumstances. *See J.R. Stevenson Corp. v. County of Westchester*, 113 A.D.2d 918, 493 N.Y.S.2d 819, 823 (2d Dep't 1985); *Bigda v. Fischbach Corp.*, 849 F.Supp. 895, 902 (S.D.N.Y.1994). Furthermore, a court should not interfere with the agreement of the parties, absent some persuasive justification. *Wilmington Trust Co. v. Aerovias de Mexico, S.A. de C.V.*, 893 F.Supp. 215, 218 (S.D.N.Y.1995) (*citing Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 415 N.Y.S.2d 800, 389 N.E.2d 113 (1979)). Finally, the party challenging the provision has the burden to prove that it was not freely agreed to and is in fact an unenforceable penalty clause. *See P.J. Carlin Construction Co. v. City of New York*, 59 A.D.2d 847, 399 N.Y.S.2d 13, 14 (1st Dep't 1977); *Rattigan v. Commodore Intern. Ltd.*, 739 F.Supp. 167 (S.D.N.Y.1990).

Here, Defendants have not met their burden. First, there is no evidence that the graduated late payment was not freely agreed to. In fact, the record supports the opposite conclusion. For example, this was an arms length transaction between experienced businessmen. If anything, Defendants were the more experienced party to the contract. Where the parties are sophisticated

---

**3.** The March 17, 1993 rider states:

In event of default the purchase price of the vessel shall be reduced in the following manner: $1,000 for the first week; $2,000 for the second week; $3,000 for the third week, and in similar fashion for subsequent weeks. The total reduction of the purchase price shall be equal to the cumulative sum of the penalties for each week of default.

(Def's Rule 7.1(f) Statement, Ex. 6).

and both sides were represented by counsel who negotiated the contract at arms length, there is simply no basis to assume that one party overreached the other side. *See Bigda*, 849 F.Supp. at 902–903; *Boyle v. Petrie Stores Corp.*, 136 Misc.2d 380, 518 N.Y.S.2d 854, 861 (N.Y.Sup.1985).

Second, Defendants have put forth no evidence that the amount of the liquidated payment does not bear a reasonable proportion to Plaintiff's probable loss. *See Leasing Service Corp.*, 673 F.2d at 73. Plaintiff's business is seasonal, and the calculation of $1,000 for the first week, $2,000 for the second week, $3,000 for the third week, and in similar fashion for subsequent weeks, is not so great as to shock the conscience.

Accordingly, because the enforceability of a liquidated damages provision can be determined by the Court as a matter of law, *see Leasing Service Corp.*, 673 F.2d at 74; *Bigda*, 849 F.Supp. at 895, and Defendants have raised the issue of enforceability in their present motion, the Court holds that the graduated late payment required in the March 17, 1993 rider is enforceable.

### H. Punitive Damages

▇▇▇ Finally, Defendants argue that Plaintiff has failed to demonstrate that there is a genuine issue of material fact as to whether Defendants' conduct warrants punitive damages.

▇▇▇ Under New York law, "punitive damages are recoverable in actions based on tortious conduct that involves malice, oppression, wanton or reckless disregard of the plaintiff's rights or other circumstances of aggravation." *O'Neill v. Yield House Inc.*, 892 F.Supp. 76, 78 (S.D.N.Y.1995) (*citing Grau v. Eljay Real Estate Corp.*, 162 A.D.2d 320, 556 N.Y.S.2d 898, 899 (1st Dep't 1990)). Punitive damages are not restricted to intentional injury and can be awarded where negligence is shown to be gross or wanton. *See Home Ins. Co. v. American Home Prods.*, 75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990). Furthermore, "[i]t is not the form of the action that gives the right to the jury to give punitive damages, but the moral culpability of the defendant." *Hudson Mo-*

*tors Partnership v. Crest Leasing Enters.*, 845 F.Supp. 969, 975 (E.D.N.Y.1994).

As previously stated, entry of summary judgment is appropriate only where "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under the substantive law governing punitive damages in New York, the character of Defendants' conduct is an issue material to the resolution of Plaintiff's punitive damages claim. *See American Home Prods.*, 75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930.

After reviewing the parties' submissions, it is clear that Plaintiff and Defendants advance diametrically opposite assertions regarding the character of Defendants' conduct in this case. Consequently, the Court finds that a genuine dispute exists concerning facts that are material to Plaintiff's claim for punitive damages, thus "requir[ing] a judge or jury to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2515 (quotation omitted).

Accordingly, Plaintiff is not precluded from seeking punitive damages against Defendants.

### III. CONCLUSION

In summary, the Port Welding Defendants' Motion for Summary Judgment is DENIED in its entirety. The Scarano Defendants' Motion for Summary Judgment is GRANTED IN PART: The Court holds that the March 17, 1993 rider does not impose personal liability on John and Richard Scarano for contract damages other than the return of deposit monies.

Furthermore, the Court holds that the graduated late payment required in the March 17, 1993 rider is enforceable.

All other requests for relief that were not expressly addressed in this decision are DENIED.

**IT IS SO ORDERED.**