**LURZER GMBH, Plaintiff,**

v.

**AMERICAN SHOWCASE, INC. and the One Club for Art & Copy, Inc., Defendants.**

### No. 97 CIV.6576(JSR).

United States District Court, S.D. New York.

Dec. 29, 1997.

---

Bernice K. Leber, Arent, Fox, Kintner, Plotkin & Kahn, New York City, for plaintitff.

Richard C. Seltzer, Kaye, Scholar, Fierman, Hays & Handler, New York City, for American Showcase, Inc., One Club for Art & Copy, Inc., defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On September 5, 1997, plaintiff Lurzer GMBH ("Lurzer") commenced this lawsuit against defendants American Showcase, Inc. ("American") and The One Club For Art & Copy, Inc. ("One Club") asserting, inter alia, trademark infringement, false advertising, false description of origin, trade name dilution, unfair competition, deceptive trade practices, breach of contract, breach of fiduciary duty, conversion, and breach of the covenant of good faith and fair dealing. American, which had already filed an arbitration proceeding against Lurzer on August 13, 1997 with respect to a single breach of contract claim (relating to a limit on advertising pages), moved to stay this action pending arbitration and was joined in this motion by defendant One Club. Lurzer cross-moved to stay the already-pending arbitration or dismiss it outright. Upon consideration of the parties' written submissions and oral arguments, the Court telephonically advised the parties on October 28, 1997 that: (a) defendants' motion to stay this action pending arbitration would be denied except as to (i) its breach of contract claims premised on specifications h, i, j, k, l and n of Paragraph 92 of the Complaint, (ii) its breach of fiduciary duty claim set forth in Count Eight of the Complaint, and (iii) its breach of the covenant of good faith and fair dealing claim set forth in Count Ten of the Complaint; and (b) plaintiff's motion to dismiss or stay the already-pending arbitration of American's claim that Lurzer wrongfully imposed a limit on advertising below 70 pages would be denied. This memorandum will serve to confirm those rulings and briefly state the reasons therefor.

Lurzer (and its predecessor, Creative Services, Ltd.) has published two magazines, Archive and Lurzer's Int'l Archive, since 1984. Declaration of Georg Eckardt, dated September 17, 1997 ("Eckardt Decl. "), at ¶ 2. In 1984, Lurzer and American orally agreed that American would be the exclusive United States distributor of Archive. Subsequently, on March 14, 1987, American and Lurzer entered into a written agreement (the "1987 Agreement") granting American the right to publish the United States edition of Archive and to sell paid advertising for Archive in the United States. Affirmation of Richard C. Seltzer, dated September 17, 1997 ("Seltzer Aff. "), Ex. A, Part I, ¶ 1.

The 1987 Agreement was for an initial term of five years, to be "automatically extended each and every five (5) year period thereafter," id. Ex. A, Part I, ¶ 9, except in the "Event of Default" (which included, among other things, a failure by American to make timely payments) followed by written notice and a failure to cure. Id. Ex. A, Part III, ¶ 9(vi). The 1987 Agreement further provided that "[a]ny controversy arising out of or relating to this contract or the breach thereof shall be settled by arbitration in the City of New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association," id. Ex. A, Part III, ¶ 1, except that "[e]ither party may take its case to a normal court of law for claims on past due moneys." Id.

Previously (during the period when Lurzer and American had simply an oral understanding), American had (on August 8, 1996) filed an application for registration of a federal trademark in the term "Archive," declaring under penalty of perjury that no other person or corporation had the right to use the mark. Eckardt Decl., Ex. 6. Subsequently, the trademark was registered by the United States Patent and Trademark Office, but not until March 24, 1987, or shortly after the 1987 Agreement was executed.

Meanwhile, during negotiation of the 1987 Agreement, the parties had disagreed regarding ownership of rights in the Archive mark. According to Lurzer, Lurzer told American at the time that the mark belonged solely to Lurzer, and American clearly understood as much. According to

American, it consistently told Lurzer that American had the right to protect the mark in the United States and would seek to register the mark in the United States. Declaration of Ira B. Shapiro, dated September 26, 1997 ("Shapiro Decl."), at ¶ 2. The 1987 Agreement, however, was silent as to this dispute.

More than five years after entering into the 1987 Agreement, the parties executed a July 13, 1992 letter agreement (the "1992 Amendment") setting forth certain "adjustments in [the] March 14, 1987 contract," Eckardt Decl. Ex. 10. Among other things, Lurzer agreed in the 1993 Amendment "to allow [American] to sell up to 70 pages [of advertising] in all future issues of Archive[.]" Id. Ex. 10 (addendum). The 1992 Amendment also provided that "there will be no further recalculations or reinterpretations of any kind until June 30 1997 that will result in [Lurzer] increasing any costs to [American]" beyond those set forth in that amendment. Id. Ex. 10. Except as otherwise specified, the 1992 Amendment contemplates that the 1987 Agreement is a "continuing obligation" that, "while it can be reviewed on a five-year basis to adjust certain terms, . . . can only be terminated pursuant to the terms outlined in paragraph 9 of the March 14, 1987 contract." Finally, the 1992 Amendment anticipates the parties' "continued relationship based on the abovementioned modifications and the March 14, 1987 contract." Id.

In July 1997, Lurzer notified American that it would publish only 53 pages of American advertising in future issues. Seltzer Aff., Ex. D (demand for arbitration). On August 13, 1997, American filed a demand for arbitration, claiming that Lurzer's position was a breach of the 1992 agreement to allow American to solicit 70 advertising pages per issue. Id. Lurzer retaliated by commencing the instant action. The parties' motions followed.

The reasons for the Court's rulings may be briefly summarized as follows.

■ First, with respect to American's motion to stay this action, it is well–established that the applicability of an arbitration clause to a particular dispute is determined by considering (1) whether the parties agreed to arbitrate, (2) whether the arbitration agreement encompasses the asserted claims, (3) whether any federal statutory claims that have been asserted were intended by Congress to be non-arbitrable, and (4) whether, if some but not all claims in the case are arbitrable, the Court should stay proceedings on the remaining claims. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir.1987).

■ As to the first consideration, the 1987 Agreement, as noted, contains an arbitration clause providing that "[a]ny controvers[y] arising out of or relating to this contract or the breach thereof shall be settled by arbitration [.]" Lurzer, however, contends that this arbitration clause no longer remains in effect because the 1992 Amendment, which itself contains no such clause, superseded the 1987 Agreement. This argument is entirely without foundation, however, for, as already described, the 1987 Agreement explicitly provides that it is to be "automatically extended each and every five (5) year period thereafter," and terminates only upon notice of default.[1] Moreover, the 1992 Amendment clearly states that it was intended as an "adjustment" of the 1987 Agreement and

1. While Lurzer alleges that its Complaint serves as a notice of default triggering termination if not cured, see Complaint ¶ 93, the Complaint's conclusory allegation that American has "fail[ed] to make payment" required by the contract does not identify the alleged breach with sufficient detail to permit American to cure that breach. See *Pacificorp Capital Inc. v. Tano, Inc.*, 877 F.Supp. 180, 185 (S.D.N.Y.1995). Accordingly, Paragraph 93 of the Complaint does not trigger termination of the 1987 Agreement. In any event, even if the parties now terminate the 1987 Agreement, disputes within the scope of the arbitration clause based on events occurring while the contract was in effect would still be required to be arbitrated under the terms provided in the contract.

refers to the parties' "continued relationship based on the [letter's] modifications and the March 14, 1987 contract." Declaration of Georg Eckardt, dated September 17, 1997 ("Eckardt Decl."), Ex. 10. Finally, although the 1992 letter states that "there will be no further recalculations or interpretations of any kind until June 30 1997," Eckardt Decl. Ex. 10, this language on its face only sets a date during which no renegotiations will occur, rather than a date on which, as Lurzer contends, the agreement will terminate.

■■■ Lurzer also argues that American fraudulently induced the arbitration clause by failing to disclose to Lurzer its application to register the Archive trademark, and by representing in that application that no other party had the right to use the mark. Even assuming, arguendo, that those acts constitute fraud, this in itself would not render the arbitration clause unenforceable absent "some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 667 (2d Cir.1997). While a "fraud in the inducement of the arbitration clause itself—an issue that goes to the 'making' of the agreement to arbitrate" is subject to adjudication by the court, the Federal Arbitration Act "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Although Lurzer argues that retaining ownership of the trademarks was an essential element of its agreement with American, it does not demonstrate any particular nexus between trademark ownership and its agreement to the arbitration clause in particular.

■■■ Turning next to the scope of the arbitration clause, federal policy requires courts to "construe arbitration clauses as broadly as possible," *Collins & Aikman Products Co. v. Building Systems, Inc.,* 58 F.3d 16, 19 (2d Cir.1995), and to resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration," *id.* It is equally well-established, however, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citations omitted). Therefore, "while keeping in mind the federal policy favoring arbitration," a court must "carefully consider" whether the parties to the arbitration clause intended the dispute at issue to be submitted to arbitration. *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 831–832 (2d Cir.1988).

It is undisputed that the 1987 Agreement did not include any mutual understanding with regard to United States trademark rights. See Declaration of Immo Petersen, dated September 17, 1997 ("Petersen Decl.")", at ¶¶ 25–33; Declaration of Ira Shapiro, dated September 26, 1997, at ¶ 2(a). Rather, during negotiations, each side made clear to the other their conflicting positions regarding ownership of these rights, and agreed to disagree. Thus, in its reply memorandum of law, American asserts that "[t]he 1987 Agreement and its 1992 amendment are silent on ownership of the trademark." Reply Memorandum of American Showcase, at 12.

■■■ Accordingly, despite the presumption of arbitrability that follows from broad arbitration clauses like this one, the fact that there was no contractual meeting of the minds with regard to trademark ownership precludes any finding that the parties intended that disputes relating to trademark ownership would be within the scope of the contract's arbitration clause. Accordingly, American's motion to stay this action pending arbitration is denied with respect to Lurzer's trademark infringement and related claims.

■ In addition to the state and federal trademark infringement and related claims, Lurzer also asserts claims of breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. These all clearly fall within the scope of the broad arbitration clause, unless they are within the exception for claims on "past due moneys." The claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing cannot be said to constitute claims for "past due moneys," and accordingly, American's motion is granted with respect to these claims. With respect to the breach of contract claim, however, the issue is more particularized. Lurzer alleges that American has breached the 1987 Agreement by:

a. failing to bill advertisers in Plaintiff's Magazine in the correct amount;

b. failing to bill advertisers for barter transactions;

c. failing to bill advertisers for short rates;

d. failing to calculate subscription royalties on a cash basis as defined in the 1987 License Agreement;

e. failing to pay advertising royalties;

f. failing to pay Plaintiff for the use of subscriber lists;

g. failing to pay Plaintiff for the use of advertisers lists;

h. offering special discounts to Plaintiff's advertisers to the detriment of Plaintiff;

i. offering other economic inducements (such as free editorial page references in Plaintiff's magazines) while at the same time discounts in KLIK! and One;

j. breaching Plaintiff's right to an audit of the books and records of the defendant; and

k. establishing a controlled circulation subscriber base for certain of defendant's publications to the detriment of Plaintiff;

l. failing to apply proper accounting methods to Plaintiff;

m. failing to pay the purchase price of the magazine as agreed;

n. distributing, publishing or selling magazines which are similar to the ARCHIVE magazine.

Complaint ¶ 92. While claims a. through g. and m. set forth claims on "past due moneys," and thereby fall within the exception to arbitration, the remainder do not. Accordingly, American's motion for a stay of this action pending arbitration is granted with respect to the breach of contract claims based on allegations h. through l. and n. of Paragraph 92 of the Complaint, but is denied with respect to the remainder of that paragraph.

Second, with respect to Lurzer's motion to stay or dismiss the arbitration of American's claim regarding the limit on advertising, this claim is not one seeking payment that is "past due;" rather, American seeks an injunction compelling adherence to the contractual agreement to publish 70 pages. Moreover, Lurzer's representation that it has accepted 53 pages for publication in the Volume 4, 1997 issue of the magazine is irrelevant, because even assuming that a claim for money damages will accrue when and if Volume 4 is published with only 53 pages of advertising, American has asserted no claim for any such money damages in its arbitration demand. Accordingly, Lurzer's motion to stay or dismiss arbitration of American's claim is denied.

For the foregoing reasons, the Court's telephone rulings of October 28, 1997 are confirmed in all respects.

SO ORDERED.